Mony LEICHIHMAN, Appellant,

v.

PICKWICK INTERNATIONAL and American Can Company, Appellees.

No. 86–5150.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 9, 1986.

Decided March 24, 1987.

Rehearing Denied May 7, 1987.

Stephen T. Refsell, Minneapolis, Minn., for appellant.

Jon P. Parrington, Minneapolis, Minn., for appellees.

Before ROSS, JOHN R. GIBSON and FAGG, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Mony Leichihman appeals from a judgment entered on a jury verdict after the second trial of Leichihman's age discrimination claims brought under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634 (1982), and the Minnesota Human Rights Act, Minn.Stat.Ann.

§§ 363.01–.14 (West Supp.1987). At the first trial, Leichihman obtained a jury verdict and judgment for $60,000, but the district court[1] granted Pickwick's motion for a new trial on the ground that the verdict was against the weight of the evidence. On appeal, Leichihman argues that the district court erred in granting Pickwick a new trial after his favorable verdict; in granting summary judgment dismissing American Can Company, Pickwick's parent company, as a party prior to the first trial; and in denying Leichihman's motion for a new trial after he received an unfavorable verdict in the second trial.[2] Finding no error in any of these rulings, we affirm.

Pickwick, a subsidiary of American Can Company since 1977, is one of the largest distributors of records, tapes and stereo products in the United States. Through its "rack" division, Pickwick stocks record departments in various discount and department stores. Through its retail division, Pickwick sells these items in its own retail chains, such as the Musicland stores.

In 1965, Leichihman emigrated with his wife and daughter from Romania to the United States. In 1966, he was hired by J.L. Marsh & Heilicher Distribution, a Pickwick predecessor, as an entry-level record packer, and within a few months was promoted to supervisor in the Customer Returns department. In 1978, he was promoted to the position of Quality Control Manager. He held this position until Pickwick was reorganized in 1981.

The reorganization was one of the cost-cutting measures implemented by Pickwick to help it recover from tremendous financial setbacks that it began to incur in 1980. In the reorganization, Pickwick split into two distinct companies; one operated the Musicland stores, the other was responsible for rack and distribution. Leichihman was assigned to the Musicland group. Leichihman testified that, because most of his work had been connected with rack and distribution, he lost about 95% of his responsibilities when the company split. The testimony also indicated that a substantial portion of Leichihman's functions were taken over by another younger Pickwick employee who had formerly reported to Leichihman, but who was assigned to the rack/distribution company in the reorganization.

In the spring of 1981, a company task force recommended further cost-cutting measures. The task force conducted a six-month study to identify areas of possible savings and came up with a number of ideas, including eliminating several jobs. One of the jobs recommended for elimination was Leichihman's new position in the retail company.

The recommendation to eliminate Leichihman's position came in March of 1981. Leichihman, however, was not fired until July. The parties strongly disputed the circumstances surrounding Leichihman's termination. Pickwick's stated policy is to place any laid-off employee in another position in the company that fits the employee's qualifications and needs. In June and July of 1981, two Operations Support Analyst positions became available. Joy Harris, the Pickwick employee who was interviewing candidates for these positions, testified that Ed Erdmann, head of the cost-reduction task force, told her that an "older man" was going to come by for an interview and to simply "go through the motions" of interviewing Leichihman without actually offering him the job. At trial, Erdmann denied making such a statement, except to admit that he used the term "older man" to describe Leichihman. Erdman and another Pickwick official also testified, contrary to Leichihman's testimony, that Pickwick offered Leichihman the opportunity to interview for these positions and he refused to do so.

At trial, Leichihman asserted two theories of liability. He claimed, first, that Pickwick's cost-cutting reduction-in-force policies had a disparate impact on Pickwick's older employees, including Leichih-

---

1. The Honorable Edward J. Devitt, Senior United States District Judge for the District of Minnesota, presided at the first trial.

2. The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota, presided at the second trial.

man. Second, he claimed that age discrimination was a determining factor in Pickwick's failure to give him a bona fide opportunity to relocate to another available position. The jury in the first trial returned a special verdict finding in favor of Leichihman on both theories and awarding him $60,000. Upon Pickwick's motion, the district court set aside the verdict as being against the weight of the evidence. The jury found for Pickwick in the second trial.

## I.

### A.

Leichihman's first argument is that Pickwick's motion for a new trial was untimely. This argument is meritless.

After the district court ordered entry of judgment on May 14, 1984, both parties jointly moved pursuant to Rule 60 of the Federal Rules of Civil Procedure to vacate the judgment. Rule 60 provides that errors in judgment arising from clerical mistakes or those arising from mistake, inadvertance, surprise, or excusable neglect may be corrected by the court. *See* Fed.R. Civ.P. 60(a), (b). As the parties stated in their motion, the district court had previously ruled that it would receive evidence on certain state, "front-pay," and liquidated damage claims after the verdict was returned. The clerk entered judgment, however, on May 9, 1984, before the presentation of this evidence. The motion further noted that in reliance on the Court's statement that further evidence would be received, Pickwick had not timely moved for judgment n.o.v. or for a new trial. The court granted the motion and vacated the judgment.

In his brief to this court, Leichihman claims that the statement in his motion to the district court that a clerical error had been made actually had no support, that it is clear that the entry of judgment "could not have been based on a clerical error," and that, in fact, the joint motion "amounted to nothing more than an agreement of the parties to enlarge the 10 day period set forth in Rules 50(b) and 59(b) for the filing of post-judgment motions." Appellant's

Brief at 15. Leichihman then cites cases holding that neither the parties nor the court may extend the time for filing these post-trial motions, never acknowledging that in these cases no motion to vacate the judgment under Rule 60 had been made or granted. *See Fairway Center Corp. v. U.I.P Corp.*, 491 F.2d 1092 (8th Cir.1974); *Weir v. United States*, 339 F.2d 82 (8th Cir.1964).

We are satisfied that the district court acted within its equitable authority under Rule 60 in vacating the judgment and that Pickwick's new trial motion was timely. Moreover, we find Leichihman's characterization of the Rule 60 motion as a post-trial motion made under Rule 50(b) or 59(b) to be inaccurate, at best.

### B.

Leichihman asserts that the district court misapplied the proper legal standard in granting a new trial. He notes that the district judge denied Pickwick's motion for a judgment n.o.v., rejecting Pickwick's argument that there was *no* evidence to support an age discrimination claim. Appellant's Brief at 17. He then takes issue with the court's determination that Pickwick's evidence of financial hardship overwhelmed Leichihman's allegations of age discrimination. Leichihman claims that in making this judgment the court simply substituted its weighing of the evidence for that of the jury. Leichihman concludes that it is "clear there was sufficient evidence to support the jury's verdict." *Id.* at 22.

This argument simply fails to distinguish between the standard for granting a new trial and the standard for judgment n.o.v. In assessing the new trial motion, the judge was no longer required to ignore Pickwick's evidence and give Leichihman the benefit of every favorable inference; he was allowed to weigh the evidence for himself. *See, e.g., Day v. Amax, Inc.*, 701 F.2d 1258, 1262–63 (8th Cir.1983). Nor was he required to deny the motion simply because there was *sufficient* evidence for the jury to have found in Leichihman's favor.

Even when *substantial* evidence supports a verdict, the trial court may conclude that there has been a miscarriage of justice. *See Brown v. Syntex Laboratories, Inc.,* 755 F.2d 668, 673 (8th Cir.1985).

The court recognized that the prevention of injustice is the overriding principle in deciding whether to grant a new trial on the ground that the verdict was against the weight of the evidence. *See Leichihman v. Pickwick International, Inc.,* 589 F.Supp. 831, 833 (D.Minn.1984) (order granting new trial) (citing *Fireman's Fund Ins. Co. v. Aalco Wrecking Co.,* 466 F.2d 179 (8th Cir.1972), *cert. denied,* 410 U.S. 930, 93 S.Ct. 1371, 35 L.Ed.2d 592 (1973), and *Altrichter v. Shell Oil Co.,* 263 F.2d 377 (8th Cir.1959)). Also, the order accurately describes the parameters of the court's exercise of its discretion in setting aside the jury verdict. The order states that "[t]he court must be motivated by more than the fact that it would have come to a different conclusion had it been the trier of fact. The court must feel that the jury quite clearly reached a seriously erroneous result in spite of the clear weight of the evidence." At 834 (citing *Day v. Amax, Inc.,* 701 F.2d 1258 (8th Cir.1983); *Altrichter,* 263 F.2d at 377).

[redacted] A district court must also give its reasons for concluding that the verdict is against the great weight of the evidence. *See Stafford v. Neurological Medicine, Inc.,* 811 F.2d 470, 474 (8th Cir.1987); *Goldsmith v. Diamond Shamrock Corp.,* 767 F.2d 411, 416 (8th Cir.1985). In the present case, the court stated:

> The testimony of Pickwick executives and managers about the harsh realities Pickwick faced after the industry-wide recession and the drastic steps that had to be taken to salvage the company made plaintiff's allegations and evidence of age discrimination seem peculiarly subjective and extremely strained. With Pickwick laying off hundreds of employees and divesting itself of entire divisions and affiliated companies, the evidence that personnel decisions affecting plaintiff were motivated by age discrimination was overwhelmed.
>
> We are definitely and firmly convinced that the jury was mistaken in its verdict. The interests of justice as well as the clear weight and logical force of the evidence require a new trial.

At 834.

We are satisfied that the district court carefully analyzed the evidence presented in the first trial.

[redacted] Leichihman asserts, however, that in granting a new trial the district court addressed only one theory of recovery—the reduction-in-force claim—and failed to address his second theory, that Pickwick failed to relocate him to another available position for which he was qualified. We reject this argument.

In considering the sufficiency of the evidence, the court acknowledged that the jury had determined that Pickwick willfully violated the Age Discrimination in Employment Act both in terminating Leichihman and in failing to offer him another position. At 833. Thus, the court recognized that two separate claims of discrimination were involved. Then, in discussing the weight of the evidence, the court stated that it agreed with Pickwick's argument that "any evidence supporting plaintiff's *claims* was clearly refuted by Pickwick's evidence of retrenchment and economically motivated personnel decisions." *Id.* at 834 (emphasis added). The court concluded that the verdict was against the weight of the evidence and that a new trial was necessary to avoid a miscarriage of justice. *Id.* The court's further discussion concerning the industry-wide recession relates primarily to the termination issue. Nonetheless, the court ultimately concluded that Pickwick's evidence overwhelmed Leichihman's evidence "that personnel *decisions* affecting plaintiff were motivated by age discrimination." *Id.* at 834 (emphasis added). From the court's consistent use of the plural in describing Leichihman's "claims" and Pickwick's "decisions," we can only conclude that it considered both claims in arriving at its decision.

[redacted] A motion for new trial is addressed to the judicial discretion of the district

court and will not be reversed except for a clear abuse of that discretion. *Syntex Laboratories, Inc.*, 755 F.2d at 673. Having concluded that the district court adhered to the proper legal standard and sufficiently articulated why it arrived at its conclusion, our review of the court's weighing of the evidence is limited. As we cannot conclude the district court abused its discretion, we affirm the grant of a new trial.

## II.

Leichihman also appeals from the district court's order granting summary judgment for American Can Company, Pickwick's parent company, on all of Leichihman's claims against it. In his complaint, Leichihman alleges that American Can determines and directs in substantial part the employment policies of Pickwick, and that American Can directed and orchestrated Pickwick's actions in terminating him. American Can moved for summary judgment, arguing that Leichihman had produced no evidence to support his assertion that American Can had any involvement in the decision to terminate Leichihman.

To successfully oppose the motion, it was incumbent upon Leichihman to set forth specific facts showing a genuine issue for trial. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir.1984); Fed.R.Civ.P. 56(e). Summary judgment is appropriate only if, when viewing the facts in the light most favorable to Leichihman and giving him the benefit of all reasonable factual inferences, there is no genuine issue of material fact, and American Can is entitled to judgment as a matter of law. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986); *Kegel v. Runnels*, 793 F.2d 924, 926 (8th Cir.1986). We believe that American Can met that standard.

■ The record shows that the only facts marshalled by Leichihman is that, after American Can acquired Pickwick, American Can changed some of the management and retirement benefit policies that affected Pickwick employees. Leichihman asserts that from the existence of these policies, a jury could infer that American Can directed Pickwick to get rid of Leichihman. We believe that any such inference would be untenable. There is no evidence linking American Can to any of Pickwick's individual employment decisions, including the decisions to terminate and to refuse to relocate Leichihman. Thus, Leichihman's employment discrimination claim against American Can fails as a matter of law. The district court properly granted summary judgment dismissing American Can as a defendant.

## III.

Leichihman next contends that after the second trial the district court erred in denying his motion for a new trial. He contends that two of the jury instructions and several evidentiary rulings were erroneous.

## A.

In one of its instructions to the jury, the court set forth as follows the essential elements of Leichihman's claim that he was discriminated against during the reduction-in-force:

To establish his second claim Mr. Leichihman bears the burden of first establishing that he lost his employment as a result of age discrimination. To do so he must show the following five elements:

1. That he was between 40 and 70 years old at the time of his termination;

2. That he was performing his job at a level that met his employer's legitimate expectations;

3. That despite his performance in his job, he was terminated;

4. That his job in its various parts continued in existence;

5. That Mr. Leichihman's age was a determining factor in Pickwick's actions.

■ Leichihman contends that he should not have been required to prove the fourth element of this charge, "that his job in its various parts continued in existence," and that its inclusion constituted prejudicial error. Relying on our decision in *Holley v. Sanyo Manufacturing, Inc.*, 771 F.2d 1161

(8th Cir.1985), Leichihman asserts that the fourth and fifth elements should have been combined into one to read, "under circumstances from which it can. be reasonably concluded that plaintiff's age was a determining factor in defendant's action." We conclude, however, that the district court did not err in giving the instruction under the particular facts of this case.

In *Cova v. Coca Cola Bottling Co.*, 574 F.2d 958 (8th Cir.1978), we held that to make a prima facie disparate treatment case the plaintiff must show:

> (1) that he or she is within a protected age group, (2) that he or she met applicable job qualifications, (3) that despite these qualifications, he or she was discharged, and (4) that, *after the discharge the position remained open and the employer continued to seek applications from persons with similar qualifications.*

*Cova*, 574 F.2d at 959 (emphasis ours); *see Tribble v. Westinghouse Elec. Corp.*, 669 F.2d 1193, 1196 (8th Cir.1982).

This particular formulation is based on the guidelines of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (discussing elements of prima facie case under Title VII, a statute analogous to the Age Discrimination in Employment Act). However, this formulation is not exclusive; because the facts of each age discrimination case will necessarily vary, so will the required prima facie proof. *See Id.* at 802 n. 13, 93 S.Ct. at 1824, n. 13; *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 576, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978); *Holley*, 771 F.2d at 1165.

In *McDonnell Douglas*, the facts involved discriminatory hiring and, thus, required proof that there actually was a job opening for which the plaintiff was qualified. 411 U.S. at 802, 93 S.Ct. at 1824. This showing indicates that the employer had a continuing need for the plaintiff's services and skills, thereby creating the inference that the employer based its decision on an impermissible consideration. *See Loeb v. Textron*, 600 F.2d 1003, 1013 & n. 11 (1st Cir.1979) (in an analogous discriminatory firing case, plaintiff must show that employer sought a younger replacement, thereby demonstrating a continuing need for plaintiff's services); *cf. Furnco*, 438 U.S. at 577, 98 S.Ct. at 2949. In *Cova* and *Tribble, supra*, we included that same requirement. Although those two cases ostensibly involved reductions-in-force, the plaintiff in each case alleged that, after being discharged, the employer hired younger replacements to fill the same or similar position. Thus, the requirements that the position remained open and the employer continued to seek applications fit the factual circumstances involved.

In choosing an appropriate framework for a prima facie case in a particular factual context, it must be remembered that the ultimate issue in a disparate treatment case is whether the employer intentionally discriminated against the plaintiff. *See United States Postal Serv. Bd. v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983). Thus, any modification of the prima facie case described in *McDonnell Douglas* must still require the plaintiff to create an inference of a discriminatory reason for his termination.

 In the present reduction-in-force situation, the court adapted the required prima facie elements to fit the particular factual controversy. Leichihman's position throughout has been that, during Pickwick's reorganization, his responsibilities were given to younger, less experienced employees.[4] Thus, his case was founded on the allegation that Pickwick fired him while retaining a younger employee to perform Leichihman's duties.[5]

---

4. Leichihman alleged this in his complaint, Supp.App. at 278, 279–80; his trial memorandum, Supp.App. at 298; his opposition to Pickwick's motion for summary judgment, Supp. App. at 363, 367; and his brief to this court, Appellant's Brief at 8. Leichihman also requested a jury instruction in which one of the elements of his prima facie case would be "[t]hat the defendant assigned duties to a younger person that the plaintiff previously performed." Supp.App. at 404.

5. Much of the confusion in this case arises because Leichihman also attempted to proceed under a disparate impact theory to support his reduction-in-force claim. He asserts that, under

At trial, Pickwick strongly disputed this allegation, asserting that Leichihman's duties were not redistributed, but simply eliminated as a result of the economic downturn. Thus, unlike the circumstances in *Cova* and *Tribble,* Leichihman never contended that Pickwick hired a younger person to replace him. Instead, he contends that when his position was eliminated, his duties went to a younger employee.

■ By including the requirement that his job function continued to exist as an element of Leichihman's prima facie case, the district court was simply following the conceptual underpinnings of *McDonnell Douglas.* A prima facie case, although a minimal showing, at least requires the plaintiff to show that the employer's actions were more likely than not based on a consideration of impermissible factors. *See Furnco,* 438 U.S. at 577, 98 S.Ct. at 2949; *Halsell v. Kimberly-Clark Corp.,* 683 F.2d 285, 290 (8th Cir.1982), *cert. denied,* 459 U.S. 1205, 103 S.Ct. 1194, 75 L.Ed.2d 438 (1983). In a reduction-in-force case, there is no adverse inference to be drawn from an employee's discharge if his position and duties are completely eliminated; it is readily explained by the employer's economic hardship and the decrease in business. If Leichihman cannot show that Pickwick had some continuing need for his skills and services in that his various duties

were still being performed, then the basis of his claim collapses.

Nothing in *Holley, supra,* specifically eliminates this element of a prima facie case. In *Holley,* we agreed with the Sixth Circuit that the ADEA does not create "automatic presumptions" against an employer whenever an older worker is replaced by a younger one. 771 F.2d at 1166 (quoting *Laugesen v. Anaconda Co.,* 510 F.2d 307, 313 n. 4 (6th Cir.1975)). Thus, we determined that when the basis of the plaintiff's case rests on the employer's decision, during an economic downturn, to consolidate the plaintiff's position and that of a younger employee, the plaintiff must make some additional showing that age was a determining factor in his termination. *See id.* at 1165–66. The fifth element of the present instruction correctly expresses this requirement.

In *Holley,* we also recognized the full import of the Court's admonition in *McDonnell Douglas* that the requirements of the prima facie case must be tailored to the facts. We did not discuss whether the position's continued existence was a necessary element. It is possible that in some circumstances the showing that age was a determining factor in the employer's action will be sufficient, and the plaintiff need not show that his position continued to exist. However, in light of our holdings in *Cova* and *Tribble* and the position taken by

this different theory, whether his job function continued to exist has nothing to do with his claim. However, a disparate impact analysis is simply inapplicable here.

Unlike a disparate treatment case, under a disparate impact theory the plaintiff is not required to show discriminatory animus in his prima facie case, but instead must show only that a facially neutral employment policy operates as a "built-in headwind[ ]" against older employees. *See Griggs v. Duke Power Co.,* 401 U.S. 424, 432, 91 S.Ct. 849, 854, 28 L.Ed.2d 158 (1971). The reduction-in-force at Pickwick was not implemented through some facially neutral procedure, such as a height and weight requirement or an aptitude test, but was conducted through a series of subjective decisions eliminating certain positions in order to cut costs. There existed no neutral policy, the impact of which could be measured. Thus, a disparate impact model provides an inappropriate vehicle for analysis. *See Talley v. United States Postal Serv.,* 720 F.2d 505, 507 (8th Cir.1983), *cert.*

denied, 466 U.S. 952, 104 S.Ct. 2155, 80 L.Ed.2d 541 (1984); *Harris v. Ford Motor Co.,* 651 F.2d 609, 611 (8th Cir.1981) (per curiam). Indeed, Leichihman acknowledges as much when he asserts that an appropriate instruction would still require the plaintiff to show that age was a "determining factor" in the termination decision.

In addition, each of the cases Leichihman cites for support analyzes reductions-in-force and company reorganizations as disparate treatment cases. *See Holley v. Sanyo Mfg., Inc.,* 771 F.2d 1161 (8th Cir.1985); *Hedrick v. Hercules, Inc.,* 658 F.2d 1088, 1094 (5th Cir.1981); *La-Grant v. Gulf & W. Mfg. Co.,* 748 F.2d 1087, 1090–91 (6th Cir.1984) (plaintiff must produce evidence from which factfinder can reasonably conclude that the employee intended to discriminate). We believe that Leichihman simply confused the use of statistics to show disparate impact with their use to create an inference of discriminatory action in a disparate treatment case.

Leichihman regarding the factual circumstances giving rise to his claim, we cannot conclude that the district court erred in instructing the jury in this respect.

### B.

■ Leichihman further objects to the following jury instruction given by the court:

A single spoken statement referring to age, standing alone, does not necessarily prove an intent to discriminate. Such statement, if you believe it occurred, is like any other evidence and you may consider it or reject it in light of all of the facts as you find those facts to be.

We find no error in this cautionary instruction. First, it accurately states the law. Cf. Cariddi v. Kansas City Chiefs Football Club, Inc., 568 F.2d 87 (8th Cir.1977) (derogatory comments by supervisor not excessive and opprobrious, but mere casual conversation did not rise to level of Title VII violation); Morales v. Dain, Kalman & Quail, Inc., 467 F.Supp. 1031 (D.Minn. 1979) (isolated comments not sufficient to show discriminatory animus in termination decision). Moreover, by including language that a single statement does not "necessarily" prove intent, and in cautioning the jury to examine it "in light of all the facts," the district court's instruction gave the jury the option of finding that, in the context of this case, the statement *was* sufficient evidence of discriminatory intent.

Second, it was tailored to the facts. It refers to the statement Ed Erdmann allegedly made to Joy Harris that she should "go through the motions" of interviewing an "older man" for an available position. Leichihman argues that it inaccurately refers to a "single" statement even though Erdmann had made other remarks concerning age. The transcript shows, however, that Erdmann's only other· statement regarding age was his one comment to Ms. Harris that he didn't know that she was twenty years older than him. We cannot conclude that this charge misled the jury.[6]

### C.

We have thoroughly examined Leichihman's remaining claims of error as to the district court's evidentiary rulings during the second trial. Finding no abuse of discretion, we affirm.

The district court judgment is affirmed in all respects.

---

**6.** Leichihman's contention that the clause "if you believe it occurred" improperly implied that Harris was lying is meritless. The court was simply indicating to the jury that it was not required to accept the testimony of any witness, even if that testimony was unrefuted.