Henry L. **NAHREBESKI**, Plaintiff,

v.

**CINCINNATI MILACRON MKTG. CO.**, Defendant.

No. 92–0921–CV–W–8.

United States District Court, W.D. Missouri, W.D.

Oct. 4, 1993.

Martin M. Meyers, Virginia P. Perez, Kansas City, MO, for plaintiff.

Donald W. Giffin, Daniel B. Boatright, Kansas City, MO, for defendant.

## ORDER

STEVENS, Chief Judge.

This case is before the court on the motion of defendant for summary judgment. For the reasons set forth below, defendant's motion for summary judgment is denied.

### I. Factual Summary

Briefly stated, the facts of this case are as follows:

Plaintiff was discharged from his position as a "field service engineer" in defendant's plastics machinery division on November 14, 1990. Plaintiff was fifty-seven years old at the time, and, in his last work appraisal on October 30, 1990, plaintiff's supervisor wrote that plaintiff was "doing a good job." Claiming that his age was a determining factor in his discharge, plaintiff brings this action under the provisions of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. Defendant denies that age was a consideration in its decision to discharge plaintiff and claims that plaintiff's position was eliminated as part of a corporate reorganization because there was a "lack of work" in plaintiff's service territory.

Plaintiff began working as a "field service engineer" for defendant in 1983. In approximately 1986, plaintiff's service territory included western Missouri, Nebraska, Kansas, and eastern Colorado. In the middle of June 1990, plaintiff was reassigned to defendant's Dallas Regional Office. The Dallas Regional Office's territory covered Texas, Oklahoma, Louisiana, Arkansas, Mississippi, Missouri, Nebraska, Kansas, Colorado, and New Mexico (service only).

At the time defendant's Dallas Regional Office opened in June 1990, the only field service representatives were plaintiff and Jeff Lybrook ("Lybrook"). Later, however, defendant began utilizing Ed Starr ("Starr") and Paul Weiser ("Weiser") to service the Dallas office's area. At some point, plaintiff's eastern Colorado, western Kansas, and western Nebraska territories were assigned to Weiser. Plaintiff's territory became eastern Nebraska, eastern Kansas, Missouri, and southern Illinois.

Richard Stone ("Stone") was plaintiff's supervisor at the Dallas Regional Office. Stone reported to Dale Werle ("Werle"), defendant's "Field Service Manager." Defendant's "Customer Service Manager" was Martin Lakes ("Lakes").

In 1989 and 1990, the defendant hired a number of additional field service representatives (including Weiser and Starr). In 1990, however, the defendant experienced a slowdown in its sales. In October 1990, Lakes informed Werle that, because of economic conditions, a directive had come down stating that Werle had to reduce defendant's force of field service representatives by four. As it turned out, two field representatives were planning to resign. Of the remaining field representatives, Werle decided to "lay off" the plaintiff and Dick Wermus ("Wermus"). Plaintiff and Wermus were in their fifties and were the two oldest field representatives working for the defendant in the United States.

In his deposition, Werle testified that he made the decision to discharge plaintiff in particular because recent and projected machine shipments revealed that there was not much activity in plaintiff's territory. Werle does not recall getting that information from a specific report (although he reviewed period reports and machine shipment records), but his "conversations with Rick Stone [plaintiff's supervisor] showed that there was very little business going into [plaintiff's] territory at that time and ... conversations with the marketing people confirmed that."

Werle Dep. at 42–43. Werle also has stated that "[Rick] Stone's opinion was solicited and provided in regard to the decision" to discharge plaintiff. Def.'s Response Pl.'s First Interrogs. at 8. Stone, however, does not remember any specific conversations with Werle about the slowdown in sales in his region and testified that he wasn't asked to give any input into the decision to discharge plaintiff. Stone Dep. at 46–47, 27–28. Werle did not generate any documentation of his research to support the recommendation that plaintiff's position be eliminated. Werle Dep. at 43.

On November 14, 1990, plaintiff met with Werle and Stone. Werle told plaintiff that he was being laid off, not because of his performance, but because of a "lack of work" in plaintiff's territory. On plaintiff's "Exit Report" form, Werle marked a box indicating that plaintiff had been laid off because of "Reorg/Consolidation." Werle did not mark boxes labelled "Lack of work" or "Job eliminated."

Following plaintiff's discharge, his workload was absorbed by the remaining employees in the Dallas Regional Office—Lybrook, Starr, and Weiser. In contrast to plaintiff, who began working for defendant in 1983, Weiser began his employment with defendant in February 1990. Starr had been hired in September 1989. All three men—Lybrook, Starr, and Weiser—were in their thirties.

Plaintiff filed a charge of unlawful employment discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about November 19, 1990. In response, David Bente ("Bente"), defendant's Director of Human Resources, instructed Werle to make inquiries into whether any customers had complained about plaintiff. In a letter dated August 27, 1991, the EEOC notified plaintiff that it was terminating its investigation of plaintiff's charge. Plaintiff filed this action on October 13, 1992.

## II. Discussion

### A. The Summary Judgment Standard

The applicable legal standard is a familiar one. Summary judgment is appro-

priate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The court must view the record in the light most favorable to the nonmoving party, and draw all reasonable inferences in favor of the nonmovant. *Raschick v. Prudent Supply, Inc.*, 830 F.2d 1497, 1499 (8th Cir.1987), *cert. denied*, 485 U.S. 935, 108 S.Ct. 1111, 99 L.Ed.2d 272 (1988). The party seeking summary judgment bears the initial burden of demonstrating that an essential element of the nonmoving party's case is lacking. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmoving party to come forward with sufficient evidence to show that there is a genuine factual controversy as to that issue. *Id.; see also* Fed.R.Civ.P. 56(e). To establish the existence of a genuine issue of fact for trial, the nonmoving party must produce evidence that would allow a reasonable fact finder to resolve that issue in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). If the nonmoving party fails to so respond, summary judgment, if appropriate, shall be entered against that party. *Id.*

### B. Analysis

In the instant case, defendant advances two principal arguments in support of its motion for summary judgment. First, defendant argues that plaintiff's claim is barred by the applicable statute of limitations. Second, defendant argues that plaintiff's claim fails for lack of evidence of age discrimination. These arguments are addressed individually, below.

#### 1. Statute of Limitations

Defendant argues that plaintiff's ADEA claim is barred by the statute of limitations. *See* 29 U.S.C. § 626(e). Previously, 29 U.S.C. § 626(e) required an ADEA claimant to bring suit within at least two years of receiving notice that the EEOC had termi-

nated its investigation of the claimant's charge. However, effective November 21, 1991, section 115 of the Civil Rights Act of 1991 amended 29 U.S.C. § 626(e) to require claimants to file suit within 90 days after receiving notice that the EEOC has terminated its investigation.

In the instant case, plaintiff received notice that the EEOC had terminated its investigation of his charge on or about August 27, 1991. Plaintiff filed the instant action on October 13, 1992. Thus, plaintiff's claim is timely under the pre-Civil Rights Act version of 29 U.S.C. § 626(e), but barred under the amended statute. Predictably, plaintiff argues that the pre-Civil Rights Act two-year statute of limitations applies, while defendant contends that the amended 90-day statute provides the applicable limitations period.

■ For purposes of this decision, the court will assume that plaintiff's claim is governed by the amended version of 29 U.S.C. § 626(e). Nevertheless, for the reasons set forth below, the court finds that the statute of limitations should be equitably tolled to prevent plaintiff's claim from being time-barred.

Plaintiff was discharged on November 14, 1990. Five days later, on November 19, 1990, plaintiff filed a charge of unlawful employment discrimination with the EEOC. On or about August 27, 1991, the EEOC sent plaintiff a letter notifying him that the EEOC had terminated its investigation. Significantly, the EEOC letter advised plaintiff that, "The [ADEA] provides ... for a two-year statute of limitations on the recovery of back wages (three years, where the violation is willful)." Plaintiff filed this lawsuit less than two years later, on October 13, 1992.

The facts set forth above support the conclusion that plaintiff relied upon the EEOC's statement that the applicable limitations period was two years, attempted to pursue his claim diligently, and believed he was in compliance with the statute when he filed this case on October 13, 1992. Under these circumstances, the court finds that the statute of limitations should be equitably tolled. *See Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 151, 104 S.Ct. 1723, 1726, 80 L.Ed.2d 196 (1984) (indicating that equitable tolling is justified when the claimant receives inadequate notice from the EEOC) (citing *Gates v. Georgia–Pacific Corp.,* 492 F.2d 292 (9th Cir.1974)); *see also Hill v. John Chezik Imports,* 869 F.2d 1122, 1124 n. 2 (8th Cir. 1989) (same) (citing *Baldwin* and other cases).[1]

■ The court further finds that plaintiff should be granted leave to amend his complaint to plead the facts that justify the application of equitable tolling in this case. Fed. R.Civ.P. 15(a) declares that leave to amend "shall be freely given when justice so requires," and establishes a liberal amendment policy. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Buder v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.,* 644 F.2d 690, 694 (8th Cir.1981); *see also* 6 Charles A. Wright et al., Federal Practice & Procedure § 1488 (1990). Plaintiff filed this case believing that he was in compliance with the applicable statute of limitations. Defendant delayed raising the complicated legal issues surrounding its statute of limitations defense until slightly more than a month before trial. Allowing plaintiff to amend his pleadings to state the reasons why he filed this action on October 13, 1992 will not require additional discovery, will not jeopordize the trial date, and will not otherwise prejudice defendant in preparing for a trial on the merits.

Accordingly, the court finds that plaintiff's claim is not barred by 29 U.S.C. § 626(e) and defendant's motion for summary judgment is denied insofar as it relies upon the assertion that plaintiff's claim is time-barred. Plaintiff is instructed to file an amended complaint that pleads facts which justify the application

---

1. The court further notes that, assuming plaintiff received the EEOC letter on September 3, 1991 (a week after it was signed), a 90-day statute of limitations would have required plaintiff to file this action on December 2, 1991—just eleven days after the Civil Rights Act of 1991 became effective. This consideration—along with plaintiff's apparent *pro se* status at the time he received the EEOC letter and the benificient purposes behind the ADEA and the Civil Rights Act of 1991—also support a finding that equitable tolling applies in the instant case.

of equitable tolling in this case on or before October 12, 1993.

### 2. The Evidence

The procedural framework in ADEA cases is well established. "[T]he burden of production rests first on the plaintiff to establish his prima facie case, then on the defendant 'to articulate some legitimate nondiscriminatory reason for the employee's rejection,' ... and finally again on the plaintiff...." *Holley v. Sanyo Mfg., Inc.*, 771 F.2d 1161, 1164 (8th Cir.1985) (citations omitted).

To make out a prima facie case in the instant case, plaintiff must show:

1. That he was between forty and seventy years old at the time of his discharge;

2. That he was performing his job at a level that met his employer's legitimate expectations;

3. That plaintiff was discharged in spite of his adequate qualifications;

4. That plaintiff's job in its various parts continued to exist; and

5. That plaintiff's age was a determining factor in the defendant's decision to discharge him.

*Leichihman v. Pickwick Int'l*, 814 F.2d 1263, 1268–70 (8th Cir.1987). The parties agree that plaintiff has satisfied elements one through four of his prima facie case.

■ Defendant, however, argues that plaintiff has not produced evidence that age was a determining factor in defendant's decision to discharge plaintiff. In a closely related argument, defendant contends that plaintiff has failed to demonstrate that defendant's stated reason for the discharge ("lack of work") is false and that age discrimination is the real reason for the defendant's actions. Thus, the essential question before the court is whether plaintiff has adduced sufficient evidence of age discrimination to make out a prima facie case and otherwise demonstrate the existence of a material fact for trial.

Plaintiff has come forward with evidence that he was assigned new territory; that portions of his former service territory were assigned to a younger employee; and that he was terminated for "lack of work" just five months later. The evidence also shows that Werle claims to have conducted extensive research to select the two employees who would be terminated, yet did not document either his research or the findings that led to his ultimate decision. The evidence further shows that while Werle claims to have consulted with plaintiff's immediate supervisor, Stone, in making the decision to terminate plaintiff, Stone states that he wasn't asked to give any input into the decision to discharge plaintiff. There also is evidence that, after plaintiff filed his EEOC charge, the defendant made inquiries into whether there were any customer complaints against plaintiff. In addition, there is evidence that, after his termination, plaintiff's duties were assigned to younger employees who had been hired as late as February 1990. Finally, the evidence shows that defendant ultimately selected its two oldest service employees—plaintiff and Wermus—for discharge.

Based on the evidence set forth above, the court finds that plaintiff has demonstrated that he is able to make out a prima facie case of age discrimination. The court further finds that there is sufficient evidence to allow a jury reasonably to conclude that age was a determining factor in defendant's decision to discharge the plaintiff.

■ Finally, the court rejects defendant's contention that plaintiff is absolutely required to prove that the defendant's stated reason for the discharge is false. Defendant asserts that it discharged plaintiff because there was a "lack of work" in plaintiff's territory. During his deposition, plaintiff admitted that he "[didn't] have any doubt that we had a lack of sales and that there was a lack of work in my area at the time." Nahrebeski Dep. at 88. According to defendant, under *St. Mary's Honor Center v. Hicks*, —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), an employer's stated reason for taking adverse action against an employee "cannot be proved to be 'a pretext *for discrimination'* unless it shown *both* that the reason was false, *and* that discrimination was the real reason." *Id.*, at ——, 113 S.Ct. at 2752. Thus, defendant argues, because plaintiff has admitted that the stated reason for his discharge is true, defendant is entitled to sum-

mary judgment because plaintiff cannot prove that his employer's stated reason for the discharge is a "pretext for discrimination" under *Hicks*.

The court rejects this argument. *Hicks* holds that the factfinder's rejection of an employer's stated reason for taking adverse action against an employee does not necessarily compel a finding that the employer is liable for unlawful employment discrimination. *Id.*, at ——, 113 S.Ct. at 2749; *see also Hicks v. St. Mary's Honor Center*, 2 F.3d 265, 266 (8th Cir. Aug. 16, 1993) ("The [Supreme] Court held that the factfinder's rejection of the employer's proffered reasons does not compel judgment for the Title VII plaintiff. . . ."). Thus, contrary to defendant's apparent belief, *Hicks* does not announce a new and rigid standard for determining whether an employer's articulated reason for a particular employment decision is a "pretext for discrimination."

Instead, *Hicks* emphasizes and illuminates the character of a plaintiff's "ultimate burden"—that of " 'persuading the [trier of fact] that [he] has been the victim of intentional discrimination.' " *Id.*, —— U.S. at ——, 113 S.Ct. at 2747–48 (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981)). Thus, while *Hicks* does in fact state that an employer's stated reason for taking adverse action against an employee "cannot be proved to be 'a pretext for discrimination' unless it shown both that the reason was false, and that discrimination was the real reason," *id.*, —— U.S. at ——, 113 S.Ct. at 2751 (emphasis omitted), that language is dicta and should be read and applied with a critical eye. This is particularly true in view of *Hicks'* admonition that it is "generally undesirable, where holdings of the Court are not at issue, to dissect the sentences of the United States Reports as though they were the United States Code." *Id.*

The court declines to discover a revolutionary and ironclad standard in the dicta relied upon by defendant. *Hicks* may, in a single sentence, state that an employer's articulated reason for taking adverse action against an employee cannot be proved to be " 'pretext' . . . unless it shown both that the reason was false, and that discrimination was the real reason." *Id.* (emphasis omitted) However, *Hicks* also indicates that a plaintiff may succeed by demonstrating " 'that the [employer's] proffered reason was not the true reason for the employment decision,' and that [an impermissible factor] was." *Id.*, at ——, 113 S.Ct. at 2747 (quoting *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095).

■ Thus, as the court reads *Hicks*, a plaintiff may show that an employer's stated reason for a decision is a "pretext for discrimination" either by showing that the stated reason is factually false (*e.g.*, an employee was not late for work, as claimed) or by showing that the stated reason is false in the sense that it was not the real reason for the employer's actions (*e.g.*, the employee was late, but was actually fired because of race, gender, or age). This view is consistent with the broader teaching of *Hicks:* whether an employer's stated reasons are "true" or "false" is only a secondary inquiry; the paramount question is whether a preponderance of the evidence persuades the trier of fact that the plaintiff has been the victim of unlawful discrimination. *See id.*, —— U.S. at ——, 113 S.Ct. at 2753 ("It is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination"); *see also United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714–16, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983) (stating that the ultimate question is discrimination vel non, not whether the employer's evidence is credible).

Accordingly, the court rejects defendant's suggestion that *Hicks* absolutely requires the plaintiff to prove that the stated reason for his discharge ("lack of work") is factually false. So long as the plaintiff is able to convince the factfinder that he has been the victim of age discrimination, he may prevail under *Hicks*. As noted above, there is evidence from which a jury could find that age was a determining factor in the defendant's decision to discharge plaintiff. Therefore, this case presents material questions of fact for trial and the motion of defendant for summary judgment is denied.

*III. Conclusion*

For the reasons set forth above, it is

ORDERED that the motion of defendant for summary judgment is denied. It is further

ORDERED that plaintiff shall amend his pleadings in the manner outlined in Section II.B.1 of this order on or before October 12, 1993.