# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-16-00580-CV

**Aaron V. Bishop; Ronald J. Booker; Richard Burns; Albert Cortez, Jr.;
Eric De Los Santos; Jovita Lopez; Aurelio Martinez; Norris McKenzie;
Tomas Montez; Henry D. Moreno; Ricardo Pelayo; Jesse Prado;
Oscar Ramirez; James Stanesic; Lester Vanzura; et al., Appellants**

**v.**

**The City of Austin, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
## NO. D-1-GN-14-002459, HONORABLE KARIN CRUMP, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This dispute arises from the 2013 restructuring of the organized crime division of the Austin Police Department ("APD"). Seventeen current and former APD officers allege that the City of Austin restructured that division using discriminatory employment practices prohibited by the Texas Commission on Human Rights Act ("TCHRA"). *See* Tex. Lab. Code § 21.051. These plaintiffs now challenge a series of orders granting the City's pleas to the jurisdiction and rendering a take-nothing judgment against each plaintiff. We will affirm the district court's orders.

## BACKGROUND

Because the parties are familiar with the facts underlying this dispute, and because many details are classified, we will summarize the relevant facts only to the extent necessary

to resolve this appeal. Sometime in 2012 or 2013, the City and APD leadership initiated a comprehensive review of the organized crime division to investigate complaints of chronic inefficiency and unprofessionalism within that division. According to APD, some of the problems discovered were more serious than originally anticipated, leading the City and APD leadership to conclude the entire division would need to be restructured.

At the outset of restructuring, the organized crime division comprised several smaller units: the human trafficking unit, the gang suppression unit, the career criminal unit, and one or more narcotics units. After deciding the longstanding problems could not be corrected under existing division leadership, APD informed the highest ranking officers—including the division commander and three lieutenants—that they would be reassigned to other divisions. The next-highest ranking officers—the sergeants—were offered interviews that afforded each sergeant an opportunity to explain how he or she would address the problems within the organized crime division. One sergeant chose to retire without attending his interview, and four others were reassigned to other divisions. APD also reassigned several detectives and other lower-ranking officers. Of the 107 officers in the organized crime division in May of 2013, a total of 29 were reassigned or chose to retire by the end of the year.

These personnel decisions ultimately led the plaintiffs here to file individual complaints with the Texas Workforce Commission alleging discrimination on the basis of ethnicity, national origin, race, and age in violation of section 21.051 of the Texas Labor Code. Upon receiving their respective notices of claim closure and right-to-sue letters, they then jointly filed this suit against the City. The City raised a defense of governmental immunity through a series of pleas

to the jurisdiction and motions for summary judgment. The district court granted the City's pleas to the jurisdiction and motions for summary judgment and issued orders rendering a take-nothing judgment against each plaintiff. The plaintiffs now appeal from those orders.

**STANDARD OF REVIEW**

The district court's jurisdiction is a question of law we review de novo. *Guevara v. H.E. Butt Grocery Co.*, 82 S.W.3d 550, 551 (Tex. App.—San Antonio 2002, pet. denied). "Immunity from suit bars a suit against the State unless the Legislature expressly consents to the suit." *Texas Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002); *see also Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012); *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). A governmental unit may raise the issue of immunity and challenge jurisdiction "through a plea to the jurisdiction or other procedural vehicle, such as a motion for summary judgment." *Alamo Heights Indep. Sch. Dist. v. Clark*, ___ S.W.3d ___, ___, No. 16-0244, 2018 WL 1692367, at *7 (Tex. Apr. 6, 2018) (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000)).

"The TCHRA waives immunity, but only when the plaintiff states a claim for conduct that actually violates the statute." *Id.* The Supreme Court of Texas recently clarified the analytical framework for evaluating jurisdiction over a TCHRA claim based on circumstantial, rather than direct, evidence of discrimination. *See generally id.* (analyzing claims of discrimination and retaliation). If the defendant in such a case presents evidence of a legitimate, non-discriminatory justification for the employment actions taken—as the City has done here—the plaintiff cannot establish jurisdiction merely by pleading a prima facie claim of discrimination or retaliation. *Id.*

3

at *7. Instead, the plaintiff "must raise at least a genuine issue of material fact" regarding each element of the claim. *Id.* (quoting *Miranda*, 133 S.W.3d at 221)*; see also id.* at *17 ("All elements of a TCHRA circumstantial-evidence claim are, perforce, jurisdictional."). "In determining whether a material fact issue exists, we must take as true all evidence favorable to the plaintiff, indulging every reasonable inference and resolving any doubts in the plaintiff's favor." *Id.* at *7 (citing *Miranda*, 133 S.W.3d at 228). "In doing so, however, we cannot disregard evidence necessary to show context, and we cannot disregard evidence and inferences unfavorable to the plaintiff if reasonable jurors could not." *Id*.

**DISCUSSION**

The plaintiffs' legal theories have evolved over the course of this litigation, with some plaintiffs alleging discrimination by disparate treatment and others alleging discrimination by disparate impact. "[Courts] long have distinguished between 'disparate treatment' and 'disparate impact' theories of employment discrimination." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993). Disparate treatment refers to an employment decision made with an intent to target one or more members of a protected group, whereas disparate impact refers to employment decisions made in accordance with some policy that, although facially neutral, affects members of a protected class more adversely than other employees. *See International Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977) (explaining the difference between the two theories of discrimination). The parties have briefed this Court as though each plaintiff is pursuing both claims.

4

We assume, for the purpose of this analysis, that each plaintiff has properly pleaded the two claims, exhausted any administrative remedies, and preserved his or her arguments for our review.[1]

### *Disparate Treatment*

To demonstrate disparate treatment under the TCHRA, a plaintiff must show: (1) that he or she is a member of a protected class, (2) that he or she experienced an adverse employment action, (3) that other similarly situated employees were treated more favorably, and (4) that the adverse employment action was motivated by the protected attribute. *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (per curiam); *see also Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 638 (Tex. 2012). The City concedes each plaintiff is a member of a class protected by the TCHRA but argues the disputed personnel decisions do not qualify as adverse employment actions, contends the plaintiffs have not identified any similarly situated employees that were treated more favorably, and denies these decisions were motivated by any protected attribute. Because it is dispositive of this appeal, we will focus on whether the plaintiffs have raised a genuine question of fact regarding the fourth element—the motivation behind the challenged decisions—on an assumption that each plaintiff has alleged an adverse employment action.[2] We will, for the

---

[1] The City contends certain plaintiffs failed to seek timely administrative relief, failed to accurately articulate the nature of the claim in the administrative complaint, or otherwise failed to exhaust administrative remedies. We find it unnecessary to address these issues to resolve this appeal. *See* Tex. R. App. P. 47.1.

[2] We will assume, without deciding, that each plaintiff has alleged an adverse employment action with the exception of Officer Moreno and Detective Prado. Moreno specializes in housing enforcement, which was moved from organized crime to another division during restructuring. Moreno concedes that his responsibilities, hours, and pay remained unchanged and has not identified any respect in which the restructuring resulted in negative material impact. He therefore has not alleged an adverse employment action. *See Elgaghil v. Tarrant Cty. Junior Coll.*, 45 S.W.3d 133,

5

most part, consider each plaintiff's claims in the context of the unit or group to which the plaintiff belonged prior to restructuring, as each presents a set of facts and a context that informs this discussion.

With respect to the human trafficking unit, APD's internal review revealed frequent internal policy violations that led Chief Acevedo and his leadership team to issue an urgent memo ordering all unit officers to suspend investigations immediately and indefinitely. APD ultimately decided to disband the unit in its entirety, with no officers exempt from the decision. The officers in this unit were subject to reassignment irrespective of race, gender, national origin, age, or seniority. The procedures used in reassignment varied from case to case, but those differences corresponded with rank and employment contract—not with any characteristic protected by the TCHRA. When challenged actions are undeniably indiscriminate, the record will not support a finding of discrimination. *See Alamo Heights*, 2018 WL 1692367, at *11 ("It would be paradoxical to permit a plaintiff to prevail on a claim of discrimination based on indiscriminate conduct."

142–43 (Tex. App.—Fort Worth 2000, pet. denied) ("Title VII and chapter 21 [of the Texas Labor Code] were designed to address ultimate employment decisions, not every action that occurs in the workplace that makes an employee unhappy." (citations omitted)).

APD did not take any action against Prado, a narcotics investigator, because he announced his retirement before the personnel decisions were made. Nothing in this voluminous record suggests APD planned to reassign Prado, terminate his position, or take any other adverse action against him. Any argument that he retired to avoid being reassigned with "all the old guys" is premised entirely on speculation and is further undermined by evidence of APD's ultimate decisions regarding the rest of the narcotics officers. Neither speculation nor subjective belief creates a genuine issue of fact regarding an element of a TCHRA claim. *Madden v. El Paso Indep. Sch. Dist.*, 473 S.W.3d 355, 362 (Tex. App.—El Paso 2015, no pet.); *c.f. UT Health Sci. Ctr.–Hous. v. Carver*, No. 01-16-01010-CV, 2018 WL 1473897, at *6 (Tex. App.—Houston [1st Dist.] Mar. 27, 2018, no pet. h.) (mem. op) (rejecting defendant's characterization of plaintiff's TCHRA allegations as speculative); *Menefee v. McCaw Cellular Commc'ns.*, No. 05-02-00142-CV, 2003 WL 1461469, at *5 (Tex. App.—Dallas Mar. 24, 2003, no pet.) (mem. op) (same).

(quoting *Baldwin v. Blue Cross/Blue Shield*, 480 F.3d 1287, 1301 (11th Cir. 2007))). Accordingly, the plaintiffs from the human trafficking unit—i.e., Bishop, Booker, Cortez, Martinez, Motez, Pelayo, and Wesley—have failed to create a genuine question of fact regarding the allegedly discriminatory motive behind the contested actions.

APD similarly decided to disband the career criminal unit in its entirety. Although APD did not find the unit to exhibit the same policy violations identified within the human trafficking unit, multiple officers were implicated in a highly publicized 2012 incident that left the City involved in civil and criminal litigation in multiple counties. APD leadership concluded the unit's relative isolation had contributed to the incident and that the unit's mission would be better accomplished through the combined efforts of multiple units than by a single, freestanding unit. Courts have acknowledged that the elimination of an entire business unit might, in some instances, disguise a discriminatory intent. *See Leichihman v. Pickwick Int'l*, 814 F.2d 1263, 1267 (8th Cir. 1987) (considering such a possibility before affirming trial court's decision to vacate jury finding of discrimination). But an inference of discrimination will not lie where the plaintiff's allegations are "overwhelmed" by the defendant's evidence of the non-discriminatory reason for its personnel decisions, *id.*, as is the case here. Thus, the plaintiffs from the career criminal unit—i.e., Lopez, McKenzie, Ramirez, and Reza—have failed to create a genuine issue regarding discriminatory intent.

APD also decided to change its approach to gang suppression. The City submitted evidence that the gang suppression unit was not operating within its budget and was showing signs of inadequate supervision. When the two sergeants in charge of the unit offered no solutions—with each one simply deferring to the other to correct the issues—APD leadership decided to replace

7

them both. The City also introduced evidence of numerous written complaints from the Austin Independent School District regarding an APD-sponsored gang-prevention program, including reports of frequent unexplained absenteeism on the part of the two APD officers assigned to the program. In response to these complaints, APD reassigned those two officers to other divisions and reduced the rank associated with the now-vacant school positions to increase supervision and reduce cost. No juror could reasonably ignore the context in which the actions challenged by the plaintiffs working in gang suppression—i.e., de los Santos, Stanesic, and Venzura—were taken, so these plaintiffs cannot satisfy their jurisdictional burden to create a genuine question of fact regarding discriminatory intent. *See Alamo Heights*, 2018 WL 1692367, at \*7.

The remaining two claims are those of Lieutenant Yarbrough and Sergeant Burns. Lieutenant Yarbrough alleges he suffered age discrimination when he was reassigned, along with the other three highest ranking officers in the organized crime division, to another division. The record reveals APD reassigned these four officers out of concern that existing division leadership could not efficiently and effectively correct the issues identified. Given the serious policy violations identified in APD's review of the division and the fact that APD chose to remove all four senior officers together—regardless of age, seniority, or specialty—Yarbrough cannot generate a genuine issue of material fact regarding discriminatory motive. *Leichihman*, 814 F.2d at 1267.

Sergeant Burns had been with APD since 1985 and specialized in narcotics investigations. Based on the results of the evaluation interviews offered to all sergeants, he was retained within the organized crime division, but APD reassigned some of his lesser responsibilities to others to increase his availability to supervise subordinate officers. He filed a charge of age

8

discrimination in December of 2013 and voluntarily resigned the following May. Burns's discrimination theory is not entirely clear. He appears to argue that he retired to avoid the humiliation of being reassigned or forced into retirement, but there is no evidence he was ever considered a candidate for reassignment or termination, much less that any such action would have been motivated by discriminatory intent. To the contrary, the record reveals that once he announced his retirement, his superiors repeatedly asked him to stay with the force. Nor is there any evidence his conditions became "so intolerable that a reasonable employee would feel compelled to resign." *Cf. Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 319 (5th Cir. 1997) (discussing resignation as form of adverse employment action). To whatever extent Burns alleges that the change in responsibilities constitutes an adverse action, the record precludes any finding that the change was impermissibly motivated by his age. Thus, like Yarbrough, Burns cannot meet his jurisdictional burden to raise a fact issue regarding a discriminatory motive. *Id.*

Reviewing this record in the light most favorable to the plaintiffs and drawing all reasonable inferences in their favor, we conclude a reasonable juror could find a discriminatory motive on the part of APD only by impermissibly ignoring the context in which the decisions were made or by otherwise disregarding the overwhelming evidence that APD acted primarily on a need to address ongoing issues within the organized crime division. The plaintiffs therefore have not raised a genuine question of fact regarding the motivation behind the disputed actions and therefore cannot establish the district court's jurisdiction over their disparate-treatment claims. *Alamo Heights*, 2018 WL 1692367, at *7, 17. We affirm district court's entry of take-nothing judgments on those claims.

9

***Disparate Impact***

The plaintiffs collectively allege the restructuring of the organized crime division resulted in a "younger and whiter" division and therefore gives rise to a disparate-impact claim under the TCHRA. To prevail on a claim of disparate impact, a plaintiff must "'(1) isolate and identify the specific employment practice challenged; (2) demonstrate any observed statistical disparity that the practice has on the protected class; and (3) demonstrate a causal link between the identified practice and the demonstrated disparity.'" *City of Austin v. Chandler*, 428 S.W.3d 398, 408 (Tex. App.—Austin 2014 no pet.) (op. on reh'g) (quoting *Texas Parks & Wildlife Dep't v. Dearing*, 240 S.W.3d 330, 342 (Tex. App.—Austin 2007, pet. denied)); *see also* Tex. Lab. Code § 21.122 (setting forth plaintiff's burden when pleading disparate impact). To establish the trial court's jurisdiction over these claims, the plaintiffs must generate a genuine issue of fact regarding each element. *Alamo Heights*, 2018 WL 1692367, at *7, 17.

After reviewing the arguments raised before the district court and on appeal, we conclude the plaintiffs have not identified any specific employment practice that might serve as the basis of a disparate-impact claim. The theory of disparate impact is derived from the original language of Title VII of the Civil Rights Act, which prohibits an employer from "classify[ing] his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." *See* Pub. L. No. 88-352, 78 Stat. 255 (1964), codified as amended at 42 U.S.C. § 2000e-2(a)(2) (2014). Relying on this language, the U.S. Supreme Court held, "The Act proscribes not only overt discrimination but also practices that are fair in form, but

10

discriminatory in operation," and further explained that an employer's intent is irrelevant in determining whether a disputed practice is discriminatory in operation. *Griggs v. Duke Power Co.*, 401 U.S. 424, 430–31 (U.S. 1971); s*ee also International Bhd. of Teamsters*, 431 U.S. at 335 n.15 (naming this theory of discrimination "disparate impact"). The Texas Legislature expressly prohibited this form of employment discrimination under the TCHRA, authorizing employees to challenge any "particular employment practice that causes a disparate impact on the basis of race, color, sex, national origin, religion, or disability." Tex. Lab. Code § 21.122(a)(1); *see also id.* § 21.122(b) (authorizing claims of age-related disparate impact).

Consistent with the language of these statutes, a plaintiff pleading disparate impact must identify a specific, uniformly imposed practice or policy that disproportionately impacts a protected class. *Chandler*, 428 S.W.3d at 408. This requirement exists "to avoid the result of employers being potentially liable for the myriad of innocent causes that may lead to statistical imbalances." *Id.* (quoting *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 100 (2008)). For example, the *Griggs* Court considered a screening exam required of all applicants for internal transfer and deemed it unlawful because it adversely impacted certain minorities and was not "shown to bear a demonstrable relationship to successful performance of the jobs for which it was used." *Griggs*, 401 U.S. at 431. And this Court previously found a prima facie case of disparate impact where older employees challenged a restructuring policy that credited all reassigned employees with a maximum of just three years of service—regardless of actual years of service. *Chandler*, 428 S.W.3d at 408–09.

11

Unlike the plaintiffs in *Griggs* and *Chandler*, the plaintiffs here have not identified any specific policy or practice used in the contested restructuring decisions. They claim to "challenge[] the specific employment practice of transferring officers with more than four or five (4 or 5) years of service." Referring to this alleged practice as the "4-5 year rule," they further contend "this specific practice permeated the entire selection process" and resulted in "gross statistical disparity" among the reassigned officers versus those selected to stay in the restructured organized crime division. But the evidence refutes any argument such a rule was used in restructuring. Despite APD's submission of thousands of pages of personnel files, internal memoranda, and other documents, there is no reference to such a practice or policy anywhere in the record. As explained in our discussion of disparate treatment, whole units were disbanded in their entirety, irrespective of the tenure of the officers within those units. All three lieutenants were reassigned, including one that had only been with the organized crime division a few months. While the record confirms that seniority and tenure factored into the personnel decisions made during restructuring, those factors, in and of themselves, are not impermissible considerations in personnel decisions. *Id.* at 410.

It appears the plaintiffs are simply recasting their allegations of disparate treatment as disparate impact. They allege, for example, that Chief Acevedo was "the architect" of "the specific employment practice of transferring officers with more than four or five years of service in [the organized crime division]." They point to evidence that Acevedo believed officers sometimes "get into a rut" and "become stale" after more than a few years of service. They argue that he and one of his commanders used restructuring as a means to "target" officers on the basis of age and

12

ethnicity. Even taking these allegations as true, as we must, these are arguments regarding pretext and discriminatory motive—not disparate impact. *See International Bhd. of Teamsters*, 431 U.S. at 335 n.15. As already explained, in light of the record as a whole—including its classified components—the plaintiffs did not meet their jurisdictional burden to establish a genuine question of fact regarding a discriminatory motive. Thus, even if we were to construe the entire restructuring approach as the "specific employment practice" resulting in disparate impact, the plaintiffs could not satisfy their jurisdictional burden, as the overwhelming evidence of business necessity and use of reasonable evaluation factors would prevent them from "creat[ing] a fact issue on the ultimate issue" in the case.[3]

Because the plaintiffs have not generated a genuine question of fact regarding disparate impact, they cannot overcome the City's governmental immunity from suit. *Alamo Heights*, 2018 WL 1692367, at *7, 17. We therefore overrule their challenge to the district court's entry of take-nothing judgment on the disparate-impact claims. Having concluded that the plaintiffs cannot overcome the City's governmental immunity from suit, we find it unnecessary to reach any other issues raised by the parties. *See* Tex. R. App. P. 47.1.

---

[3] *Alamo Heights*, 2018 WL 1692367, at *18; *see also* Tex. Lab. Code §§ 21.122(a)(1) (providing defense of "business necessity" where practice has disparate impact on the basis of race, color, sex, national origin, religion, or disability), .122(b) (instructing Texas courts to look to judicial interpretation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq.*, for defenses to age-related disparate-impact claims); *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 97–98 (2008) (clarifying that ADEA provides a defense of "reasonable factor[s] other than age" but not the defense of "business necessity" provided by other discrimination statutes).

13

## CONCLUSION

We affirm the district court's orders granting the City's motions and entering a take-nothing judgment against each plaintiff.

_____
Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Field and Bourland

Affirmed

Filed:   June 21, 2018