# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 06-2503/2791

_____

Donna Brown,                              *
                                          *
    Appellant/Cross-Appellee,       *
                                          *  Appeals from the United States
v.                                        *  District Court for the
                                          *  Eastern District of Arkansas.
Fred's, Inc.                              *
                                          *
    Defendant,                      *
                                          *
Fred's Stores of Tennessee, Inc.          *
                                          *
    Appellees/Cross-Appellants      *

_____

Submitted: March 14, 2007
Filed: July 23, 2007

_____

Before COLLOTON, HANSEN, and GRUENDER, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Donna Brown brought claims under Title VII and the Equal Pay Act ("EPA") against Fred's Stores of Tennessee, Inc., ("Fred's of Tennessee") and its parent company, Fred's, Inc. Brown appeals the district court's[1] grant of summary judgment

_____

[1]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

to Fred's, Inc., on her Title VII claim. Fred's of Tennessee cross-appeals the district court's denial of its motion for judgment as a matter of law on the EPA claim, and the court's ruling on liquidated damages. We affirm.

## I.

In 2003, Fred's of Tennessee, which operates a chain of retail stores, hired Donna Brown to work as a cashier in its store in White Hall, Arkansas. In the spring of that year, Fred's of Tennessee promoted Brown to assistant manager of the White Hall store, and several months later, Fred's of Tennessee promoted her again, this time to manager. Fred's of Tennessee eventually terminated Brown for reasons unrelated to this lawsuit.

Following her termination, Brown brought suit against Fred's, Inc., the parent company of Fred's of Tennessee, alleging that Fred's, Inc., violated Title VII and the EPA by paying Brown less than her male counterparts in the assistant manager and manager positions. Brown later amended her complaint to add Fred's of Tennessee as a defendant on her EPA claim. The district court granted summary judgment to Fred's, Inc., concluding that Brown had failed to present sufficient evidence that Fred's, Inc., was her employer. The suit continued against Fred's of Tennessee, and following a trial, a jury returned a verdict for Brown on the EPA claim and awarded her $4,109.20 in lost wages. The district court awarded an equal amount in liquidated damages pursuant to 29 U.S.C. § 260, denied Fred's of Tennessee's motion for judgment as a matter of law, and entered judgment for Brown.

II.

A.

Brown claims that the district court improperly granted summary judgment to Fred's, Inc., after concluding that Fred's, Inc., was not Brown's employer. Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). We review the district court's grant of summary judgment *de novo*.

Title VII and the EPA apply to an "employer." 42 U.S.C. § 2000e-2; 29 U.S.C. § 206(d)(1). Brown concedes that her W-2 lists Fred's of Tennessee – not its parent company, Fred's, Inc. – as her employer. Nonetheless, she points to other documents and alleged representations of Fred's, Inc., that she says establish that Fred's, Inc., employed her.

There is a "strong presumption that a parent company is not the employer of its subsidiary's employees, and the courts have found otherwise only in extraordinary circumstances." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1362 (10th Cir. 1993); *see also Johnson v. Flowers Indus. Inc.*, 814 F.2d 978, 981 (4th Cir. 1987). A parent company may employ its subsidiary's employees if (a) the parent company so dominates the subsidiary's operations that the two are one entity and therefore one employer, *see Johnson*, 814 F.2d at 981, or (b) the parent company is linked to the alleged discriminatory action because it controls "individual employment decisions." *Leichihman v. Pickwick Int'l*, 814 F.2d 1263, 1268 (8th Cir. 1987); *see also Johnson*, 814 F.2d at 981.

Brown submitted insufficient evidence of either circumstance to create a genuine issue for trial. Fred's, Inc., processed payroll and performed other services for Fred's of Tennessee in exchange for a fee, and "Fred's, Inc.," appears on Brown's

payroll check and other documents, such as the employee handbook. But nothing suggests that Fred's, Inc., and Fred's of Tennessee were a single entity. The only evidence connecting Fred's, Inc., to decisions about Brown's salary was the misinformed testimony of Ted West, who hired Brown and set her salary as an assistant manager. West testified that he *believed* he worked for Fred's, Inc., and that Fred's, Inc., and Fred's of Tennessee were the same company. West's mistaken belief about the corporate family tree, however, is insufficient to show that Fred's, Inc., actually controlled individual employment decisions regarding Brown, and Brown offers no other evidence to support this conclusion. Finally, Brown argues that Fred's, Inc., should be estopped from denying that it was Brown's employer, because Fred's, Inc., responded on the merits to Brown's EEOC complaint and identified itself as "respondent." Far from representing that Fred's, Inc., was Brown's employer, however, the response to the EEOC stated clearly that Fred's, Inc., was *not* the employer. Therefore, we affirm the district court's grant of summary judgment to Fred's, Inc., on the Title VII claim.

## B.

On cross-appeal, Fred's of Tennessee (hereafter "Fred's") asks us to reverse the district court's denial of its motion for judgment as a matter of law on the EPA claim. Judgment as a matter of law is appropriate only where the evidence is such that no reasonable juror could have found for the nonmoving party. We view the evidence in the light most favorable to the verdict, and give the nonmoving party all reasonable inferences that can be drawn from the evidence. *Christensen v. Titan Distrib. Inc.*, 481 F.3d 1085, 1092 (8th Cir. 2007).

To establish liability under the EPA, an employee must prove that her employer discriminated on the basis of sex by paying different wages to men and women who performed equal work. 29 U.S.C. § 206(d)(1); *Tenkku v. Normandy Bank*, 348 F.3d 737, 740 (8th Cir. 2003). "Equal work" means work "on jobs the performance of

-4-

which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). If a plaintiff meets this burden, then she has made a prima facie case under the EPA. *See Tenkku*, 348 F.3d at 740-41 & n.2. The employer may avoid liability by proving any of four affirmative defenses, one of which is that the pay difference between men and women was based on a factor other than sex. 29 U.S.C. § 206(d)(1); *Tenkku*, 348 F.3d at 740.

In support of her prima facie case, Brown offered evidence that Fred's promoted her to assistant manager of the White Hall store at a salary of $425 per week, which was later increased to $450 per week. Two male assistant managers at the White Hall store, Brett Ward and Jeffrey Dunbar, made $500 per week. When Fred's promoted Brown to manager of White Hall, it paid her $650 per week. Fred's employed two male managers at White Hall, Tim Scholes and Allan Beatty, at a rate of $750 per week. Ted West, the district manager who initially promoted Brown and set her salary, testified that male and female managers and assistant managers at White Hall were held to the same performance standards, that their jobs required the same skill, effort, and responsibility, and that they worked under similar conditions. This evidence was sufficient to establish a prima facie case by showing pay differences between men and women who perform equal work.

Fred's challenges Brown's prima facie case with respect to Brett Ward, an assistant manager who made $500 per week, as compared to Brown's $450. Fred's argued at trial that Ward and Brown did not perform equal work because Ward's salary was set when he became assistant manager of the store in Pine Bluff, which was a higher volume store than Brown's store in White Hall. A reasonable juror could have rejected this argument. First, Fred's provided scant evidence to show that the difference in sales volume created a substantial difference in working conditions or job demands. The EPA forbids pay disparities based on differences that are "insubstantial or minor," *Hunt v. Nebraska Pub. Power Dist.*, 282 F.3d 1021, 1030 (8th Cir. 2002); 29 C.F.R. 1620.14(a), and the jury reasonably could have concluded

-5-

that the difference in sales volume did not make the jobs unequal. *Hunt*, 282 F.3d at 1030. Second, Ward retained his higher salary even after he left Pine Bluff and transferred to the White Hall store, where there was an even stronger case that the work he performed was equivalent to Brown's. Fred's argues that Brown supervised fourteen employees at White Hall while Ward supervised as many as eighteen, but the jury could reasonably have rejected this distinction as insubstantial. *Cf. Lawrence v. CNF Transp., Inc.*, 340 F.3d 486, 492-493 (8th Cir. 2003) (holding that a reasonable juror could have found that two employees performed substantially equal work when one had eighty-five accounts and the other had one hundred accounts and a part-time assistant).

The explanation offered by Fred's for the salary disparity between Ward and Brown is that they performed substantially different work during their time at the White Hall store. Ward worked as an assistant manager at White Hall for about two months, at a time when there was no other managerial employee in the store. Fred's argues that Ward was essentially functioning as a manager during this time, even though his title was only assistant manager. According to Fred's, this explains why Ward made $500 per week, while Brown, who was an ordinary assistant manager, made $450 per week during most of her tenure at White Hall. Fred's also argues that when Brown was performing duties of a "manager" for four weeks at the end of 2003, she was paid $650 per week (by virtue of a retroactive pay raise), a rate that exceeded Ward's pay of $500 per week, for what Fred's says were comparable duties. Therefore, Fred's argues, since Ward made more than Brown when he performed more demanding work, and less than Brown when they performed the same work, Brown has failed to make a prima facie case of pay discrimination.

This was not the only reasonable conclusion available to the jury. Fred's promoted Brown to manager, and because she already had been performing the manager's duties for four weeks, Fred's gave her a retroactive pay raise from $450 to $650 per week. Ward, in contrast, was never promoted to manager, and Fred's did not

decide to pay him as a manager during his time at White Hall. The jury reasonably could have concluded that Fred's paid Brown a manager's salary because she performed the duties of a manager, but paid Ward only an assistant manager's salary because he did not perform full managerial duties. In other words, the jury could have concluded that during the time they performed substantially equal work as assistant managers at White Hall, Ward made $500 per week to Brown's $450, and this pay disparity established a prima facie case.

As for the other male employees, Dunbar, Scholes, and Beatty, Fred's argues that a reasonable juror would have been compelled to accept the explanation that the pay difference between these men and Brown was based on a factor other than sex. Fred's identifies two such factors. First, it contends that Brown lacked experience in a "big box" retail store, such as Wal-Mart, Target, or Home Depot. Second, it says, White Hall was a low-volume store, and managers and assistant managers at low-volume stores received lower salaries because they had a smaller payroll. The jury was entitled to reject both explanations.

Brown came to Fred's with retail management experience, having worked as an assistant manager at a college bookstore for four years. During that time, Brown supervised about twenty employees in total, though never more than about five at a time. While Dunbar and Beatty arguably had experience that was so superior to Brown's that a reasonable juror could not have premised a verdict on their differences in pay, the same cannot be said for Ward and Scholes. Former district manager Ted West testified that he believed Ward had prior experience, but West failed to specify this experience, and he admitted that Ward's personnel file revealed no such experience. The jury heard no evidence at all about Scholes's prior experience.[2] Moreover, Brown offered testimony from Jason Storz, who told the jury that Fred's

---

[2]In support of its motion for summary judgment, Fred's submitted an affidavit from Scholes stating that he had ten years experience as a manager of two grocery stores. This evidence was not presented to the jury.

offered him a job as assistant manager in the Pine Bluff store at a salary of $550 per week – one hundred dollars a week more than what Brown made – even though Storz was working as a cashier at Lowe's and had no management experience. Based on this evidence, a reasonable juror could conclude that Brown's retail experience was comparable to that of some of the male employees who received higher pay, and that Fred's therefore failed to prove that its pay differences were based on experience rather than sex.

The affirmative defense based on sales volume fares no better. Ward, Dunbar, and Scholes all obtained higher salaries than Brown while working at higher volume stores, and they then retained those higher salaries after transferring to White Hall. The jury reasonably could have concluded, however, that the differences in working conditions or job demands were insubstantial or minor, such that employees at different stores received unequal pay for equal work.

Fred's also offered evidence from a district manager who testified that one female manager made more than many of the male managers in her district, and that Brown had the same salary as one male manager, and had a higher salary than two others. This testimony is some evidence that pay differences at Fred's were based on a factor other than sex. At this point, however, we are not considering the evidence in the first instance as a jury. The dispositive question is whether a reasonable jury could have rejected this defense despite some evidence that supported it. The evidence supporting Fred's must be weighed against specific evidence of salary disparities between Brown and male counterparts, such as Ward and Scholes, who worked in the same store. We conclude that a reasonable juror could have weighed the evidence and found that Fred's failed to prove that those pay differences were based on a factor other than sex. Therefore, we affirm the district court's denial of the motion for judgment as a matter of law.

Finally, Fred's challenges the district court's award of liquidated damages. An employer who violates the EPA is liable for lost wages, and may also be liable for liquidated damages in an amount equal to those lost wages. 29 U.S.C. § 216(b). A district court "may, in its sound discretion," award no liquidated damages or limited liquidated damages if the employer shows that it acted "in good faith" and had "reasonable grounds for believing" its action did not violate the EPA. 29 U.S.C. § 260. This language permits a district court to reduce or eliminate liquidated damages when the employer proves good faith and reasonableness, and one of our cases suggests that the court may be required to do so upon a proper showing by the defendant. *See Clymore v. Far-Mar-Co., Inc.*, 709 F.2d 499, 505 (8th Cir. 1983). The district court found that Fred's "failed to meet its burden of proving a good faith defense," and we review this finding for clear error. *Jarrett v. ERC Props., Inc.*, 211 F.3d 1078, 1083 (8th Cir. 2000).

In their analysis of this point, the parties focus on whether Fred's acted "willfully" in violating the EPA. The district court submitted this question to the jury, which found that the violation was willful. (R. Doc. 70, Jury Interrogatories). The district court then concluded that Brown submitted sufficient evidence for the jury to find that Fred's "knew or showed reckless disregard for the fact that its conduct was prohibited by the Equal Pay Act." (R. Doc. 71, at 1). The court also found that Fred's "failed to meet its burden of proving a good faith defense, 'particularly since [Plaintiff] proved willfulness.'" *Id*. at 2 (quoting *Simpson v. Merchants & Planters Bank*, 441 F.3d 572 (8th Cir. 2006)).

Willfulness is not the correct standard for determining whether liquidated damages should be reduced or eliminated. A willful violation is one made knowingly or with reckless disregard for whether the employer's conduct was prohibited by the statute. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). The statute on liquidated damages, however, asks only whether the employer acted in subjective good faith and had objectively *reasonable grounds* for believing its act complied with

federal law.  29 U.S.C. § 260; *see McKee v. Bi-State Dev. Agency*, 801 F.2d 1014, 1020 (8th Cir. 1986).  A different statute provides that if the employee shows a willful violation, then the statute of limitations is extended from two to three years, 29 U.S.C. § 255, but this is not the standard for liquidated damages.  *See Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 310 (7th Cir. 1986).

Here, the jury found that Fred's acted willfully; the district court concluded that there was sufficient evidence to support that finding by a reasonable jury; and the district court said Fred's failed to prove a "good faith defense."  There is no express finding on whether Fred's acted with "reasonable grounds" to believe that its conduct was lawful, and it is unclear whether the court independently found that Fred's acted willfully or simply deferred to the jury's finding on that point.  The court's reference to a "good faith defense" appears to be a finding that Fred's did not act in subjective good faith, as opposed to a determination that Fred's lacked objective reasonable grounds for belief of compliance.

Despite the apparent confusion in the record, which may be traceable to language in one of our cases, *see EEOC v. Cherry-Burrell Corp.*, 35 F.3d 356, 364 (8th Cir. 1994), we believe the district court's ruling should stand.  The court clearly was prepared to accept the jury's finding of willfulness, even if the court did not explicitly make the finding on its own.  *See Simpson*, 441 F.3d at 580.  The district court's willingness to rest on a finding of willfulness – which requires knowledge or recklessness – shows *a fortiori* that it did not think Fred's acted with "reasonable grounds for believing" that its conduct was lawful.  The evidence detailed above, if taken in the light most favorable to Brown, supports at least a finding that Fred's did not have such reasonable grounds.  Accordingly, we cannot say that the district court clearly erred in declining to exercise its discretion to reduce or eliminate the liquidated damages.

\*     \*     \*

For these reasons, the judgment of the district court is affirmed.

_____