Lucinda DALTON, Plaintiff,

v.

MANOR CARE OF WEST DES MOINES IA, LLC; Manorcare Health Services, LLC; HCR Manorcare, Inc.; Heartland Employment Services, LLC; and Holly Benedict, Dean Hagen, and Scott Keefer, Individually and in their Corporate Capacities, Defendants.

No. 4:12–cv–00172–JEG.

United States District Court,
S.D. Iowa,
Central Division.

Jan. 29, 2013.

Mark D. Sherinian, Melissa C. Hasso, Sherinian & Walker PC, West Des Moines, IA, for Plaintiff.

George R. Wood, Rhiannon C. Beckendorf, Littler Mendelson PC, Minneapolis, MN, for Defendants.

## ORDER

JAMES E. GRITZNER, Chief Judge.

This matter is before the Court on a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), filed by Defendants ManorCare Health Services, LLC (MHS) and HCR ManorCare, Inc. (HCR). Plaintiff Lucinda Dalton (Dalton) resists. A hearing was not requested, and the Court finds a hearing is unnecessary. Accordingly, the matter is fully submitted and ready for disposition.

## I. FACTUAL BACKGROUND [1]

Dalton was hired to work as a Floor Nurse at a Manor Care [2] facility in West Des Moines, Iowa, in March of 2010.[3] She was promoted to a position as a Director of Care Delivery, effective in September of 2010. During the 2010–2011 winter, Dalton began to suffer from fatigue, shortness of breath, and swelling in her legs and feet as a result of a medical condition. On the morning of February 28, 2011, Dalton experienced severe chest pain and went to

---

1. As the Court addresses the Defendants' Motion to Dismiss under Rule 12(b)(6) as a motion for summary judgment, *see* pp. 14–18 *infra*, the Court views the facts "in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris,* 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoting Fed. R.Civ.P. 56(c)).

2. The Court will use the name "ManorCare" to refer to the actual facility where Dalton worked, though the use of this term does not designate which corporate entity employed and terminated Dalton.

3. Dalton asserts she was hired by Manor Care Health Services and HCR Manorcare, while Defendants claim she was hired by Heartland Employment Services (HES) to work at Manor Care of West Des Moines (WDM).

the emergency room for treatment, at which time she called her supervisor, Holly Benedict (Benedict), to inform Benedict she would not be at work that day due to her medical condition and would instead be receiving emergency treatment. Upon discharge from the hospital that day, Dalton was instructed to refrain from working until March 2, 2011, and she informed Benedict about this work restriction.

The following day, Benedict called Dalton at home and informed her she was to come in to work at 1:00 p.m. on March 2, 2011, rather than her normal start time of 8:00 a.m. When Dalton arrived on March 2, Benedict called her in for a meeting and informed Dalton that she was being placed on an indefinite suspension and that she was not to work unless instructed accordingly by Benedict. On March 3, 2011, Benedict called Dalton at home and requested she come into work to meet with Benedict at 1:00 p.m. Dalton met with Benedict, at which time Dalton was informed that she was immediately terminated from her position at Manor Care. Dalton asserts she was terminated due to her medical condition and its corresponding disabling effects in violation of federal and state law.

## II. PROCEDURAL BACKGROUND

Dalton filed a Complaint alleging disability discrimination under the Family Medical Leave Act (FMLA) and the Iowa Civil Rights Act (ICRA) against MHS, HCR, Benedict, Dean Hagen (Hagen), and Scott Keefer (Keefer) on April 12, 2012. Dalton filed an Amended Complaint on July 20, 2012, adding Manor Care of West Des Moines, IA, LLC (WDM) as a Defendant and including a new count of disability discrimination under the Americans with

Disabilities Act, As Amended (ADAAA), against all named Defendants. Defendants MHS and HCR (Defendants) filed a Motion to Dismiss Dalton's Amended Complaint on July 16, 2012, pursuant to Rules 12(b)(1) and 12(b)(6). Dalton resisted the motion on August 10, 2012.[4] Dalton moved for leave to file a second amended complaint on August 17, 2012, which was granted by Magistrate Judge Bremer on September 4, 2012. Dalton filed her Second Amended Complaint on September 14, 2012, adding Heartland Employment Services, LLC, (HES) as a defendant, following Defendants' reply in support of their Motion to Dismiss.

## III. DISCUSSION

### A. Statutory Framework

#### 1. Family Medical Leave Act (FMLA)

The FMLA provides that "[s]ubject to section 2613 of this title, an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12–month period" for one of five listed situations. 29 U.S.C. § 2612(a)(1). In order to protect this statutory right, another section of the FMLA provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). Further, "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2).

For purposes of the FMLA, an "employer" is "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees

---

**4.** Dalton also requested Rule 11 sanctions in her memoranda to support her resistance, though she withdrew this improper request to allow for the 21–day waiting period. She has not re-filed her request for Rule 11 sanctions as of the date of this Order.

for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year," including "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer," as well as "any successor in interest of an employer." 29 U.S.C. § 2611(4)(A)(i, ii).

The enforcement section of the FMLA states that "any employer who violates section 2615 of this title shall be liable to any eligible employee affected." 29 U.S.C. § 2617(a)(1). The jurisdictional section of the FMLA provides "[a]n action to recover the damages or equitable relief prescribed in paragraph (1) may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of—(A) the employees; or (B) the employees and other employees similarly situated." 29 U.S.C. § 2617(a)(2).

■ In order to more fully illustrate what persons and entities are considered "employers" for purposes of the FMLA, federal regulations provide an "integrated employer" test as well as a "joint employer" test. The "integrated employer" test looks at the following factors to determine whether multiple entities should be considered as one all-encompassing employer for purposes of the FMLA: "(i) Common management; (ii) Interrelation between operations; (iii) Centralized control of labor relations; and (iv) Degree of common ownership/financial control." 29 C.F.R. § 825.104(c)(2). The "joint employer" test applies "[w]here two or more businesses exercise some control over the work or working conditions of the employee," and the common situations where such a relationship is found to exist include:

(1) Where there is an arrangement between employers to share an employee's services or to interchange employees;

(2) Where one employer acts directly or indirectly in the interest of the other employer in relation to the employee; or, (3) Where the employers are not completely disassociated with respect to the employee's employment and may be deemed to share control of the employee, directly or indirectly, because one employer controls, is controlled by, or is under common control with the other employer.

29 C.F.R. § 825.106(a). The regulation also sets forth that:

A determination of whether or not a joint employment relationship exists is not determined by the application of any single criterion, but rather the entire relationship is to be viewed in its totality. For example, joint employment will ordinarily be found to exist when a temporary placement agency supplies employees to a second employer.

29 C.F.R. § 825.106(b)(1).

### 2. Americans With Disabilities Act As Amended (ADAAA)

■ The ADAAA sets forth the general rule that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employment compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). For purposes of the ADAAA, "[t]he term 'covered entity' means an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111(2). An "employer" includes:

A person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such person, except that, for

two years following the effective date of this subchapter, an employer means a person engaged in an industry affecting commerce who has 25 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year, and any agent of such person.

42 U.S.C. § 12111(5)(A); *see also* 29 C.F.R. § 1630.2(e). In order to enforce the rights granted in the ADAAA:

The powers, remedies, and procedures set forth in sections 2000e–4, 2000e–5, 2000e–6, 2000e–8, and 2000e–9 of this title shall be the powers, remedies, and procedures this subchapter provides to the Commission, to the Attorney General, or to any person alleging discrimination on the basis of disability in violation of any provision of this chapter, or regulations promulgated under section 12116 of this title, concerning employment.

42 U.S.C. § 12117(a). "Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter." 42 U.S.C. § 2000e–5(f)(3).

### 3. Iowa Civil Rights Act (ICRA)

The ICRA sets forth that:

It shall be an unfair or discriminatory practice for any [p]erson to ... discharge any employee, or to otherwise discriminate in employment against any applicant for employment or any employee because of the age, race, creed, color, sex, sexual orientation, gender identity, national origin, religion, or disability of such applicant or employee, unless based upon the nature of the occupation.

Iowa Code § 216.6(1)(a). This section of the ICRA does not apply to "[a]ny employer who regularly employs less than four individuals," "[t]he employment of individuals for work within the home of the employer if the employer or members of the employer's family reside therein during such employment," or "[t]he employment of individuals to render personal service to the person of the employer or members of the employer's family." Iowa Code § 216.6(6).

■ An "employer" for purposes of the ICRA "means the state of Iowa or any political subdivision, board, commission, department, institution, or school district thereof, and every other person employing employees within the state." Iowa Code § 216.2(7).

### 4. Title VII [5]

Title VII sets forth that

It shall be an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(a).

For purposes of Title VII, "employer" "means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person," with a few noted exceptions not applicable here. 42 U.S.C. § 2000e(b).

---

**5.** Although Dalton does not allege any violation of Title VII, an understanding of its basic statutory framework will assist in illustrating the applicability of *Arbaugh v. Y & H Corp.*,

546 U.S. 500, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006), and its progeny, to the case at bar.

The jurisdiction provisions for purposes of enforcing the ADAAA are found within Title VII. Thus, just as with the ADAAA, "[e]ach United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter." 42 U.S.C. § 2000e–5(f)(3).

## B. Rule 12(b)(1): Subject Matter Jurisdiction [6]

In their Motion to Dismiss, Defendants assert Dalton's FMLA and ADAAA claims fail under Rule 12(b)(1) for lack of subject matter jurisdiction. Dalton cites *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006), to support her argument that the determination of Defendants' employer status is a substantive element of her claim as opposed to a prerequisite for jurisdiction; Defendants contend *Arbaugh* does not apply to the case at bar because it dealt with Title VII's employee numerosity requirement and not employer status under the FMLA or ADAAA.

In *Arbaugh*, the defendants asserted a lack of subject matter jurisdiction after trial because they did not have the requisite number of employees to be considered an "employer" under Title VII.[7] Its status as a "jurisdictional requirement" was important because of the timing of the Rule 12(b)(1) motion—it came after trial. If the numerosity requirement was jurisdictional, the court had to agree that the threshold requirement had not been met, and the case would have been dismissed. *See* Fed. R.Civ.P. 12(b)(1) (rule setting forth the option of dismissing a claim due to a lack

of subject matter jurisdiction); Fed. R.Civ.P. 12(h)(3) (requiring that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action"). If the numerosity requirement was not jurisdictional, but rather was part of the substantive merits of the underlying claim, the motion came too late because the case had already been decided on the merits. *See* Fed.R.Civ.P. 12(b)(6) (rule setting forth the option of dismissing a claim due to the plaintiff's failure to state a claim); Fed.R.Civ.P. 12(h)(2) (stating that an objection under Rule 12(b)(6) for failure to state a claim may only be asserted before a trial on the merits occurs; any such objection may not be asserted post-trial).

The Supreme Court in *Arbaugh* expressed its concern with "drive-by jurisdictional rulings" in which courts stated they lacked jurisdiction under Rule 12(b)(1), when they were really dealing with a Rule 12(b)(6) problem. *Arbaugh*, 546 U.S. at 511, 126 S.Ct. 1235. In order to clear up the confusion with these two avenues to dismissal, the Supreme Court used Title VII's numerosity requirement to illustrate the difference between a jurisdictional bar and a substantive threshold for recovery under the statute.

First, the Court noted that "[t]he basic statutory grants of federal-court subject-matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332," providing federal courts with federal question and diversity jurisdiction. *Id.* at 513, 126 S.Ct. 1235. In *Arbaugh*, the plaintiff was invoking federal question jurisdiction under section

---

**6.** The Court will only address its jurisdiction with regard to Dalton's FMLA and ADAAA claims, as it has supplemental jurisdiction over her ICRA claim only if there is proper subject-matter jurisdiction over either or both of her federal claims for relief.

**7.** Title VII requires that a person or entity have at least 15 employees before it is considered an "employer" under the statute. 42 U.S.C. § 2000e(b).

1331, as she was bringing suit under a federal statute—Title VII. The Supreme Court discussed the jurisdiction-conferring provision of Title VII as well, which is found in 42 U.S.C. § 2000e–5(f)(3), set forth in the statutory framework section above. *Id.* at 505–06, 126 S.Ct. 1235. Although courts are obligated to determine whether they have subject-matter jurisdiction over the cases they adjudicate, "[n]othing in the text of Title VII indicates that Congress intended courts, on their own motion, to assure that the employee-numerosity requirement is met." *Id.* at 514, 126 S.Ct. 1235.

Second, the Court reasoned that "in some instances, if subject-matter jurisdiction turns on contested facts, the trial judge may be authorized to review the evidence and resolve the dispute on her own," but "[i]f satisfaction of an essential element of a claim for relief is at issue ... the jury is the proper trier of contested facts." *Id.* (citations omitted).

Third, the Court noted that if a federal court lacks subject-matter jurisdiction, it must dismiss the complaint in its entirety, but if the court grants a motion to dismiss under Rule 12(b)(6) for failure to state a claim, it typically retains supplemental jurisdiction to hear any pendent state-law claims. *Id.*

The Court reasoned that "Congress could make the employee-numerosity requirement 'jurisdictional,' just as it has made an amount-in-controversy threshold an ingredient of subject-matter jurisdiction in delineating diversity-of-citizenship juris-

diction under 28 U.S.C. § 1332." *Id.* at 514–15, 126 S.Ct. 1235. However, Congress has not specified any such jurisdictional threshold under 28 U.S.C. § 1331 or 42 U.S.C. § 2000e–5(f)(3). "Instead, the 15–employee threshold appears in a separate provision that 'does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts.' " *Id.* at 515, 126 S.Ct. 1235 (quoting *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 394, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982)).

When Congress has not clearly set forth a jurisdictional threshold requirement, as it did with the amount-in-controversy requirement in 28 U.S.C. § 1331, the Court will not read such a requirement into a statute. "If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue," but in situations where "Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Id.* at 515–16, 126 S.Ct. 1235. The Court, applying this bright-line rule, held in *Arbaugh* that the numerosity requirement in Title VII was not jurisdictional; rather, it was a substantive element of plaintiff's Title VII claim for relief and could not be contested under Rule 12(b)(1). *Id.* at 516, 126 S.Ct. 1235.

■ Defendants in the case at bar attempt to argue that *Arbaugh* is inapplicable as it deals solely with Title VII's employee numerosity requirement.[8] Def.

---

**8.** Defendants cite in support of this assertion *Melchior v. Painters District Council No. 2,* 2011 WL 5570790, at *5, n. 1 (E.D.Mo. Nov. 16, 2011), which stated in a footnote that "the Eighth Circuit has held that the minimum employee requirement is jurisdictional" in reference to the ADEA. Although *Melchior* was decided post-*Arbaugh*, the cases it relies

upon were decided before February 22, 2006, the date the Supreme Court decided *Arbaugh. See Melchior v. Painters District Council No. 2,* 2011 WL 5570790, at *5, n. 1 (E.D.Mo. Nov. 16, 2011) (citing *Cameron v. Mid–Continent Livestock Supplements, Inc.,* 211 F.Supp.2d 1120, 1125 (E.D.Mo.2002) (decided four years before *Arbaugh*); *Rummel v. Esry,* 2006 WL

Reply in Support of Def. Mot. To Dismiss, ECF No. 30 at 1. However, the Supreme Court and almost every United States Court of Appeals have disagreed with Defendants' limited view of *Arbaugh,* finding instead that the bright-line rule applied to Title VII's numerosity requirement is applicable to numerous other federal statutes.[9] Notably, the Eighth Circuit has

314342, at *3 (W.D.Mo. Feb. 8, 2006) (decided two weeks before *Arbaugh*)). The Eighth Circuit cases relied upon in these district court cases were all decided before *Arbaugh,* and therefore their holdings are no longer good law to the extent they conflict with the bright-line rule set forth by the Supreme Court in *Arbaugh.*

9. *See Gonzalez v. Thaler,* ― U.S. ―, 132 S.Ct. 641, 648–52, 181 L.Ed.2d 619 (2012) (applying the bright-line rule in *Arbaugh* and holding that the provision of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) requiring a certificate of appealability, 28 U.S.C. § 2253(c)(3), is not jurisdictional); *Reed Elsevier, Inc. v. Muchnick,* 559 U.S. 154, 130 S.Ct. 1237, 1246–47, 176 L.Ed.2d 18 (2010) (holding that, in accordance with the bright-line rule set forth in *Arbaugh,* the Copyright Act's registration requirement in 17 U.S.C. § 411(a) is nonjurisdictional); *Chao v. Hotel Oasis, Inc.,* 493 F.3d 26, 32–33 (1st Cir.2007) (applying *Arbaugh's* bright-line rule and holding that the "annual dollar value" limitation in the Fair Labor Standards Act, at 29 U.S.C. §§ 203(s)(1)(a), is nonjurisdictional); *In re Zarnel,* 619 F.3d 156, 168–70 (2d Cir.2010) (holding that, following *Arbaugh,* the credit counseling requirement set forth in the Bankruptcy Abuse Prevention and Consumer Protection Act, 11 U.S.C. § 303, is nonjurisdictional); *Animal Sci. Prods. Inc. v. China Minmetals Corp.,* 654 F.3d 462, 467–69 (3d Cir.2011) (holding that under *Arbaugh's* bright-line rule, the Foreign Trade Antitrust Improvements Act, 15 U.S.C. § 6a, sets forth substantive elements a plaintiff must satisfy to receive antitrust relief, rather than a jurisdictional bar to recovery); *Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Eng'rs., Local Union No. 66,* 580 F.3d 185, 189–90 (3d Cir.2009) (applying bright-line test in *Arbaugh* and holding that the union contract requirement in the Labor Management Relations Act, 29 U.S.C. § 185, is nonjurisdictional); *Beazer East, Inc. v. Mead Corp.,* 525 F.3d 255, 260–61 (3d Cir.2008) (holding that, after *Arbaugh,* the civil action requirement in the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9613(f)(1), is nonjurisdictional);

*Partington v. Am. Intern. Specialty Lines Ins. Co.,* 443 F.3d 334, 338–39 (4th Cir.2006) (applying *Arbaugh's* bright-line rule to find that the "person purchasing" determination in the Securities Act of 1933, 15 U.S.C. § 77*l*, is nonjurisdictional); *Gulf Restoration Network v. Salazar,* 683 F.3d 158, 172–74 (5th Cir. 2012) (holding that, after *Arbaugh,* the administrative hearing requirement in the Outer Continental Shelf Lands Act, 43 U.S.C. § 1349(c)(3)(A), is nonjurisdictional); *Hoogerheide v. I.R.S.,* 637 F.3d 634, 636–37 (6th Cir.2011) (applying *Arbaugh's* bright-line rule and holding that exhaustion of administrative remedies was not a jurisdictional prerequisite for bringing a claim under the Internal Revenue Code, 26 U.S.C. § 7433); *Spengler v. Worthington Cylinders,* 615 F.3d 481, 489–90 (6th Cir.2010) (holding that, following *Arbaugh,* the exhaustion of administrative remedies requirement under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, was nonjurisdictional); *Rabe v. United Air Lines, Inc.,* 636 F.3d 866, 869–70 (7th Cir.2011) (applying *Arbaugh's* bright-line rule and finding that whether an individual is a foreign worker is a substantive issue under Title VII or the ADEA, 42 U.S.C. § 2000e–1(a) and 29 U.S.C. § 630(f), and is nonjurisdictional); *Forester v. Chertoff,* 500 F.3d 920, 923–25 (9th Cir.2007) (holding that, after *Arbaugh,* the 30–day waiting period under the ADEA, 29 U.S.C. § 633a(d), is nonjurisdictional); *Hackworth v. Progressive Cas. Ins. Co.,* 468 F.3d 722, 726 (10th Cir.2006) (applying *Arbaugh's* bright-line rule and holding that qualification as an "eligible employee" under the FMLA, 29 U.S.C. § 2611(2)(B)(ii), is nonjurisdictional); *In re Trusted Net Media Holdings, LLC,* 550 F.3d 1035, 1042–46 (11th Cir.2008) (holding that, following *Arbaugh,* the Bankruptcy Code's requirements regarding the commencement of an involuntary case, 11 U.S.C. § 303(b), are nonjurisdictional); *Litecubes, LLC v. N. Light Prods., Inc.,* 523 F.3d 1353, 1366 (Fed.Cir.2008) (applying *Arbaugh's* bright-line rule and holding that the Copyright Act's requirement that the alleged infringement activity occur within the United States, 35 U.S.C. § 271(a), is nonjurisdictional); *Trudeau v. Fed. Trade Comm'n,*

not applied *Arbaugh* outside of the employee-numerosity cases with any frequency.[10]

*Arbaugh* set forth a broadly-applicable bright-line rule to provide guidance to courts in a variety of contexts—not just the Title VII numerosity requirement. Thus, this Court will apply *Arbaugh's* bright-line rule to the FMLA and ADAAA "employer" requirements to determine whether they are jurisdictional or substantive elements of Dalton's claim.

■ Jurisdiction was established in *Arbaugh* under 28 U.S.C. § 1331 and 42 U.S.C. § 2000e–5(f)(3). *See Arbaugh*, 546 U.S. at 513, 126 S.Ct. 1235. Dalton's case is in federal court under 28 U.S.C. § 1331, and it is specifically provided with federal court subject matter jurisdiction in the FMLA at 29 U.S.C. § 2617(a)(2), and the ADAAA at 42 U.S.C. § 2000e–5(f)(3). As Dalton's ADAAA claim uses the same jurisdictional provisions to enter federal court as those in *Arbaugh*, and the ADAAA's "employer" requirement is set forth in a separate statutory provision as in *Arbaugh*, it is clear that the ADAAA's "employer" requirement is a nonjurisdictional element of Dalton's claim.

■ Dalton is properly in federal court with her ADAAA claim, so this Court need not address whether FMLA's "employer" requirement is a jurisdictional prerequisite for bringing suit in federal court due to its supplemental jurisdiction over the FMLA and ICRA claims under 28 U.S.C. § 1367. The Court finds the "employer" requirement in the ADAAA is nonjurisdictional, and Dalton's claims can otherwise join her

ADAAA claim under this Court's supplemental jurisdiction; therefore, Defendants' motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) must be denied.

## C. Rule 12(b)(6): Failure to State a Claim

### 1. Rule 12(b)(6) Standard of Review

■ Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." However, the "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)) (alteration in original). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). The plaintiff's complaint must be read as a whole, rather than "parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir.2009) (citing *Vila v. Inter–Am. Inv. Corp.*, 570 F.3d 274, 285 (D.C.Cir.2009)).

■ Under the current pleading standard, "[a] claim has facial plausibility when the plaintiff pleads factual content that

456 F.3d 178, 183–85 (D.C.Cir.2006) (holding that, after *Arbaugh*, the final agency action requirement in the Administrative Procedure Act, 5 U.S.C. § 704, is nonjurisdictional).

**10.** *See ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 962–64 (8th Cir.

2011) (holding that the "personal standing" requirement under the Labor Management Relations Act, 29 U.S.C. § 185(a), is jurisdictional, as the Supreme Court continues to treat that section as jurisdictional after *Arbaugh* ).

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. Thus, the Court, in examining a motion to dismiss, must determine whether the plaintiff raises a plausible claim of entitlement to relief after assuming all factual allegations in the Complaint to be true. *Twombly,* 550 U.S. at 558, 127 S.Ct. 1955.[11]

### 2. Consideration of Evidence Outside of the Complaint

In evaluating the sufficiency of a complaint under Rule 12(b)(6), a court must generally "ignore materials outside the pleadings, but it may consider ... materials that are 'necessarily embraced by the pleadings.'" *Porous Media Corp. v. Pall Corp.,* 186 F.3d 1077, 1079 (8th Cir.1999) (quoting *Piper Jaffray Cos. v. Nat'l Union Fire Ins. Co.,* 967 F.Supp. 1148, 1152 (D.Minn.1997)). The purpose of this rule "is to prevent a plaintiff from avoiding an otherwise proper motion to dismiss by failing to attach to the complaint documents upon which it relies." *Young v. Principal Fin. Grp., Inc.,* 547 F.Supp.2d 965, 973–74 (S.D.Iowa 2008) (internal quotation marks and citation omitted). "Documents necessarily embraced by the pleadings include 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading.'" *Ashanti v. City of Golden Valley,* 666 F.3d 1148, 1151 (8th Cir.2012) (quoting *Kushner v. Beverly Enters., Inc.,* 317 F.3d 820, 831 (8th Cir.2003)). As set forth in Rule 12(d), "[i]f, on a motion under

**11.** In *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), the Supreme Court held as follows: "[The] complaint easily satisfies the requirements of Rule 8(a) because it gives respondent fair notice of the basis for petitioner's claims. Petitioner alleged that he had been terminated on account of his national origin in violation of Title VII and on account of his age in violation of the ADEA. His complaint detailed the events leading to his termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination. These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

*Swierkiewicz* was decided before *Iqbal* and *Twombly* set forth a new standard for pleading after Conley, so its analysis was focused on the *Conley* notice-pleading standard. The Court reasoned that "under a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case because the *McDonnell Douglas* framework does not apply in every employment discrimination case." *Id.* at 511, 122 S.Ct. 992 (discussing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and holding that the prima facie case under *McDonnell Douglas* is an evidentiary standard, rather than a pleading requirement).

The Eighth Circuit regarded *Swierkiewicz* as good law for discrimination cases after *Twombly,* confirming that Rule 8(a) "requires only that a complaint 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Gregory v. Dillard's, Inc.,* 565 F.3d 464, 496 (8th Cir. 2009) (quoting *Swierkiewicz,* 534 U.S. at 512, 122 S.Ct. 992). *Swierkiewicz* has never been expressly overruled, though many courts regard it as effectively overruled by *Iqbal's* heightened pleading rules. In order to reconcile *Swierkiewicz* with the *Iqbal/Twombly* pleading standard, it seems the Supreme Court wants to leave *Conley* and its bare notice-pleading standard behind, while also taking note of the limited facts at a plaintiff's disposal in an employment discrimination case before discovery commences—thus tempering the harshness of dismissal under Rule 12(b)(6) for such a plaintiff.

In sum, Rule 8(a) is the pleading standard for all civil actions, unless a specific exception applies; there is no such exception for employment discrimination cases, so the *Iqbal/Twombly* standard applies, though it is possibly tempered by the concerns set forth in *Swierkiewicz.*

Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." If the court treats a 12(b)(6) motion as a motion for summary judgment due to this rule, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed.R.Civ.P. 12(d).

Both Dalton and Defendants attached affidavits and other documents to their filings with the Court and relied on them heavily in their briefs regarding Defendants' Motion to Dismiss.[12] Additionally, the parent-subsidiary relationship test and the joint employer test are incredibly fact-intensive, and most cases applying these tests do so at the summary judgment stage of the case. Thus, it seems that it would be in the best interests of all involved for the Court to review the evidence submitted by the parties under the summary judgment standard in Rule 56 to ascertain Dalton's relationship with Defendants.

### 3. Rule 56 Summary Judgment Standard

As set forth in Rule 56(a), "[a] court shall grant summary judgment if the mov-

ant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Typically, the moving party must support its motion by using "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" to show there is no genuine issue of material fact before the court.[13] *See* Fed.R.Civ.P. 56(c)(1)(A). The court must then view the evidence "in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoting Fed.R.Civ.P. 56(c)). In order to deny a motion for summary judgment, "the evidence must be 'such that a reasonable jury could return a verdict for the nonmoving party.'" *Reed v. City of St. Charles, Mo.*, 561 F.3d 788, 791 (8th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

Defendants' Motion to Dismiss will be treated as a motion for summary judgment

---

12. Defendants attack the authenticity of Dalton's exhibits attached to her Resistance to Defendants' Motion to Dismiss, ECF No. 26. Because most of these exhibits were produced by one of the named defendants to Dalton originally, the Court will not address the authenticity of these exhibits until a later time when Dalton has an opportunity to engage in further discovery with the individuals who prepared the documents at issue.

13. Although the Court did not provide prior notice to the parties that it would be treating Defendants' Motion to Dismiss as a motion for summary judgment, it finds that the parties had ample notice this would likely occur. Defendants attached to their Motion to Dismiss the affidavit of a paralegal in one of their offices and an organizational chart, thereby asking the Court to consider evidence outside

of Dalton's Second Amended Complaint in deciding whether to dismiss her case. Def. Mot. to Dismiss, ECF No. 20. Dalton specifically requested that the Court decide Defendants' Motion to Dismiss under the summary judgment standard due to the inclusion of evidence with their motion, and Dalton herself attached ten exhibits to her Resistance to Defendants' Motion to Dismiss. Resist. to Def. Mot. to Dismiss, ¶ 13, ECF No. 26. In their Reply in Support of Defendants' Motion to Dismiss, Defendants were silent on the issue of deciding their motion under the summary judgment standard. The Court finds that prior notice was not necessary in this case, as the parties had sufficient opportunity to provide the Court with any relevant evidence to the issues at hand.

as set forth above, so the Court must ascertain whether there is any genuine issue of material fact necessitating review by a jury. The narrow question presented by the parties is whether, as a matter of law, Defendants were *not* Dalton's "employer" at the time of her termination in March of 2011. Stated differently, the Court must determine whether there is a genuine issue of material fact as to whether Defendants were Dalton's employer.

### 4. "Employer" Status Analysis

 Defendants claim HCR is simply a parent company—several corporate levels up—for Dalton's actual employers in this case, HES and WDM. However, even a parent company may be found liable for its subsidiary's discriminatory action in some circumstances. The Eighth Circuit held that "[a] parent company may employ its subsidiary's employees if (a) the parent company so dominates the subsidiary's operations that the two are one entity and therefore one employer, or (b) the parent company is linked to the alleged discriminatory action because it controls 'individual employment decisions.'" *Brown v. Fred's Inc.*, 494 F.3d 736, 739 (8th Cir.2007) (quoting *Leichihman v. Pickwick Int'l*, 814 F.2d 1263, 1268 (8th Cir.1987)) (internal citation omitted).[14] Under part (a) of the test it articulated, the court held "[t]here is a 'strong presumption that a parent company is not the employer of its subsidiary's employees, and the courts have found otherwise only in extraordinary circumstances.'" *Id.* (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1362 (10th Cir. 1993)) (citing *Johnson v. Flowers Indus. Inc.*, 814 F.2d 978, 981 (4th Cir.1987)).

In *Brown*, the plaintiff had submitted a copy of his payroll check, the employee handbook, and related documents to support his argument that the defendant was his employer. Additionally, the defendant had responded to Brown's EEOC complaint, identifying itself as the respondent in the case, which Brown also asserted was evidence of an employment relationship. The court found that the evidence provided by the parties was insufficient to show the defendant "actually controlled individual employment decisions regarding Brown." *Id.* at 740. Further, the court held that "the response to the EEOC stated clearly that [the defendant] was *not* the employer," so it affirmed the district court's grant of summary judgment in favor of the defendant. *Id.*

The Eighth Circuit in *Sandoval v. American Building Maintenance Industries, Inc.*, 578 F.3d 787, 795–96 (8th Cir. 2009), clarified that *Brown* only analyzed part (a) of the above-stated test—the "parent company domination" test. Thus, a parent can still be held liable to actions committed by its subsidiary if there is sufficient control under part (b) of the Eighth Circuit test. In *Sandoval*, the parent corporation and its subsidiary shared some corporate officers, entered into an agreement whereby the parent agreed to provide services for its subsidiary, "including accounting services, administrative services, electronic services, employee benefits, human resources, insurance, legal services, safety advice, and treasury services." *Sandoval*, 578 F.3d at 796. In the human resources realm, the parent corporation agreed to provide the subsidiary with the following services:

---

**14.** Although *Brown* and other cases cited to set forth the parent-subsidiary relationship test did not necessarily deal with claims brought under the FMLA or the ADAAA, these statutes are subject to the same type of analysis for purposes of analyzing the relationship among the parties. *See, e.g. Iverson v. Ingersoll–Rand Co.*, 125 Fed.Appx. 73, 76 (8th Cir. 2004) (not cited in the federal reporter) (utilizing the test set forth in *Leichihman*, 814 F.2d at 1268).

a) Assist in the development of human resource policies applicable to Subsidiary;

b) Assist in the development and distribution of employee handbooks and employment-related forms for use by Subsidiary;

c) Assist Subsidiary with employment-related workplace posting requirements;

d) Provide employee relations personnel to assist Subsidiary with employment-related problems;

e) Provide employment related legal advice and guidance;

f) Manage all employment-related lawsuits, claims and liability;

g) Preparation of Annual Affirmative Action Plan(s);

h) Provide support for Subsidiary in cases of governmental audits;

i) Manage human resources information services;

j) Develop and present employment-related division training programs.

*Id.* at 796–97. The court further discussed the parent corporation's involvement in each of the above-listed services and found that "[t]hese descriptions of [the parent corporation's] involvement in the operations of its subsidiaries, and in particular [the subsidiary at issue in this case], are sufficient to create a genuine issue of material fact with respect to whether [the subsidiary and its parent corporation] are an integrated enterprise." *Id.* at 800.

Based on the record currently before this Court, the Defendants' relationship to its subsidiary defendants is similar to that found in *Sandoval* and is certainly closer than the companies in *Brown.* In *Brown,* the court stated that the defendant's company name appeared on "Brown's payroll check and other documents, such as the

employee handbook," and that the defendant responded to Brown's EEOC complaint, though it stated in its response that it was not Brown's employer. *Brown,* 494 F.3d at 739–40.

 In the present case, Dalton provided the Court with an employee handbook, which had "HCR ManorCare" emblazoned on the front and back covers; declared "[w]e, the employees of HCR ManorCare," in the first sentence of the Vision Statement on the inside cover; and stated "[w]elcome to the HCR ManorCare team! I'm pleased that you've decided to join me in working for a company dedicated to delivering quality service," in the message from Chairman, President, and CEO of HCR ManorCare, Paul A. Ormond. Pl. Res. To Def. Mot. to Dismiss, Ex. A, at 1–4, ECF No. 26–2. These types of representations—that the recipient of the handbook is an employee of HCR ManorCare—are present throughout the handbook.

Dalton's job description form also has "HCR ManorCare" across the top right corner of the first page, and it states on page three of the document that Dalton is required to abide by all policies set forth in the *"HCR ManorCare Employee Handbook "* as well as the "HCR ManorCare Policies and Procedures" manual. *Id.,* Exhibit B, pp. 1, 3, ECF No. 26–2. Dalton's paycheck also prominently includes "HCR ManorCare" across the top of the actual check portion. *Id.,* Ex. C, ECF No. 26–2. The Performance Improvement Plan that Dalton was instructed to follow had "HCR ManorCare" across the top of the form, as did her Employee Warning Notice received on March 3, 2011. *Id.,* Exs. D & E, ECF No. 26–2. Finally, the letterhead used by the respondents in Dalton's claim to the Iowa Civil Rights Commission also had "HCR ManorCare" across the top of the page, and the letter itself was sent to

the Iowa Civil Rights Commission from Tara Jenson, Regional Human Resources Manager for HCR ManorCare. *Id.,* Ex. F, ECF No. 26–2.

Additionally, Ms. Jenson rather confusingly refers to Heartland Employment Services, LLC, as both ManorCare Health Services—West Des Moines and Manor Care Health Services in her Position Statement to the Iowa Civil Rights Commission, which seems to conflict with the organizational chart submitted by Mary Brownell that Defendants attached to their motion. *Id.,* Ex. F, ECF No. 26–2; Decl. of Mary Brownell in Support of Mot. to Dismiss, Ex. 1, ECF No. 20–3 (listing HCR ManorCare, Inc.; Heartland Employment Services, LLC; ManorCare Health Services, LLC; and Manor Care of West Des Moines IA, LLC (or West Des Moines Manor Care) as separate entities).

Based on the documentation provided by the parties, there does appear to be a genuine issue of fact as to whether Defendants are Dalton's employer for purposes of the FMLA, the ICRA, and the ADAAA. The Court's conclusion is based upon the limited record now available and is without prejudice to an appropriate subsequent motion based upon discovery and a more developed record.

## IV. CONCLUSION

For the reasons stated, the ManorCare Health Services, LLC (MHS) and HCR ManorCare, Inc. Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6), ECF No. 20, must be **denied.**

**IT IS SO ORDERED.**

